966 So.2d 1040 (2007)
Jennifer Devall COPELAND
v.
Alvin C. COPELAND.
No. 2007-CC-0177.
Supreme Court of Louisiana.
October 16, 2007.
*1041 Correro, Fishman, Haygood, Phelps, Walmsley & Casteix, James Richard Swanson, Loretta Gallaher Mince, Lance C. McCardle, New Orleans, for applicant.
Stone, Pigman, Walther, Wittmann, Phillp A. Wittmann, Daria, B. Diaz, New Orleans, Magee & Devereux, Mary Clemence Devereux, Covington, Lowe, Stein, Hoffman, Allweiss & Hauver, Robert Charles Lowe, Suzette Marie Smith, New Orleans, Joseph Marc Vezina, for respondent.
VICTORY, J.
We granted this writ application to address whether the trial court, on remand, abused its discretion in sealing certain documents in the Copeland divorce/custody case. After reviewing the record and the applicable law, we reverse the judgment of the trial court and remand this matter for further proceedings.

FACTS AND PROCEDURAL HISTORY
The divorce proceedings between Jennifer Devall Copeland and Alvin Copeland (the "Copelands") sparked the interest of the Times-Picayune, L.L.C. newspaper (the "Times-Picayune"). The Copelands filed a Joint Motion to Seal the Record, which the trial court granted. The Times-Picayune intervened, seeking to unseal the entire record. The trial court denied the newspaper access by ruling that the Times-Picayune could not intervene and ordering that the entire record remain sealed. The court of appeal also denied the Times-Picayune access, stating that "on the showings made, we find no error" in the trial court's ruling. Copeland v. Copeland, 06-0713 (La.App. 1 Cir. 4/27/06). This Court granted the Times-Picayune's writ application and held that "the judgment of the trial court sealing the entire record is vacated and set aside." Copeland v. Copeland, 06-1023 (La.6/2/06), 930 So.2d 940 ("Copeland I"). We remanded the case to the trial court to conduct a new hearing on the parties' motion to seal consistent with the following reasoning:
Considering the strong constitutional bias in favor of open access by the public to court proceedings, we find the trial *1042 court's blanket order sealing the entire record in this case to be overbroad. Although there may be some justification for sealing certain sensitive evidence in a proceeding, the parties have the burden of making a specific showing that their privacy interests outweigh the public's constitutional right of access to the record. The trial court, should it grant such relief, must ensure that its order is narrowly tailored to cause the least interference possible with the right of public access.
Id. at 941.
In accordance with this ruling, the trial court conducted a hearing on July 5, 2006 on the Copeland's motion to seal the record. After the hearing, the court issued a Judgment and Written Reasons for Judgment that left all of the substantive pleadings in the case, except Mrs. Copeland's initial Petition for Divorce, under seal. The substantive pleadings under seal are as follows: Al Copeland's Answer and Reconventional Demand and supporting affidavits, filed March 30, 2006; Jennifer Devall Copeland's Answer to Reconventional Demand, filed April 4, 2006; Joint Stipulation, filed April 4, 2006; two Consent Judgments, entered on February 17, 2006 and April 4, 2006; and a Judgment of Divorce entered April 4, 2006. In support of its ruling, the trial court stated as follows:
In this case the sealing of the record is meant to protect the children from the public, to shield them from the embarrassment, ridicule, and derision of their peers and from unwanted scrutiny of unscrupulous strangers whose knowledge of the finer details of the children's custody and visitation arrangements might enable them to do the children harm.
The court of appeal denied the Times-Picayune's writ application. Copeland v. Copeland, 06-1941 (La.App. 1 Cir. 12/28/06). We granted the Times-Picayune's writ application to consider whether the trial court complied with our ruling in Copeland I. Copeland v. Copeland, 07-0177 (La.3/23/07), 951 So.2d 1102.

DISCUSSION
Although there is no express federal constitutional provision providing for access to judicial records and proceedings, as early as 1947, the United States Supreme Court held that "a trial is a public event [and][w]hat transpires in the court room is public property." Craig v. Harney, 331 U.S. 367, 374, 67 S.Ct. 1249, 91 L.Ed. 1596 (1947). In 1978, the Court also recognized that the public has a right to inspect and copy public court records.[1]Nixon v. Warner *1043 Communications, Inc., 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).
Unlike the federal constitution, the Louisiana Constitution has an "open courts" provision, providing that "[a]ll courts shall be open . . ." La. Const. art. I, § 22.[2] Citing this provision, we have held that "[o]penness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system." State v. Birdsong, 422 So.2d 1135, 1137 (La.1982) (citing Gannett, supra, 443 U.S. at 383, 99 S.Ct. 2898).
In addition, Article 12, § 3 of the Louisiana Constitution provides that "[n]o person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law." Louisiana's Public Records Law contains a broad definition of public records and numerous specific exceptions to this law. La. R.S. 44:1(A)(2)(a) (defining "public records" as "[a]ll books, records, writings . . . having been used, . . . or retained for use in the conduct, transaction, or performance of any business . . . under the authority of the constitution or the law of this state . . ."); La. R.S. 44:31 (mandating that "[e]xcept as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person of the age of majority may inspect, copy, or reproduce any public record"); see also La. C.C.P. art. 251 (providing that "[e]xcept as otherwise provided by law, [the clerk of court] shall permit any person to examine, copy, photograph, or make a memorandum of any of these records at any time during which the clerk's office is required by law to be open").
Recognizing the public's right of access to public records is of constitutional dimension, we held in Title Research Corp. v. Rausch, 450 So.2d 933, 936 (La.1984), that the right of the public to have access to mortgage and conveyance records on file *1044 with the clerk of court "is a fundamental right, and is guaranteed by the constitution." We further held:
The provision of the constitution must be construed liberally in favor of free and unrestricted access to the records, and that access can be denied only when a law, specifically and unequivocally, provides otherwise. Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right to see. To allow otherwise would be an improper and arbitrary restriction on the public's constitutional rights.
Id. Since Title Research Corp., we have reaffirmed that "the public has a constitutional right of access to court records." Copeland I, supra, 930 So.2d at 941 (citing Title Research Corp., supra); In re John Doe, 96-2222 (La.9/13/96), 679 So.2d 900, 901(holding that "[a]s a general rule, pleadings filed in this Court are public records and are not subject to being sealed.")[3]
However, the fact that a document is filed in the court record does not necessarily mean that it will be accessible by the public. In commenting on a court's power to restrict the public's access to court records, the United States Supreme Court held that "the right to inspect and copy judicial records is not absolute" and that "every court has supervisory power over its own records and files, and [that] access has been denied where court files might have become a vehicle for improper purposes." Nixon, supra, 435 U.S. at 599, 98 S.Ct. 1306.[4] The Court declined to "identify all the factors to be weighed in determining whether such access is appropriate," but recognized that "the discretion as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Id.[5] As we held in Bester v. Louisiana Supreme Court Committee on Bar Admissions, 00-1360 (La.2/21/01), 779 So.2d 715, 721, regardless of the fact that the public records law does not contain any specific exceptions for records and documents maintained by this Court, this Court has a "constitutional, inherent duty and responsibility to regulate all facets of the practice *1045 of law," which includes "the right to determine when and under what circumstances sensitive materials under our exclusive superintendency and control should be shielded from disclosure."
A trial court's discretion in exercising this right often comes in the form of sealing all or part of a court record. Although Louisiana has no specific statutory provision allowing trial courts to seal court records, general provisions exist under which trial courts exercise this power. For instance, Louisiana Code of Civil Procedure article 191 provides that "a court possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law." In addition, La. C.C.P. art. 1631(A) provides that "[t]he court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done."
In this case, the trial court treated the motion to seal as a motion for protective order pursuant to La. C.C.P. art. 1426. This article pertains to discovery and provides that upon motion, the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." However, this relatively low standard is only applicable to discovery materials, and does not apply to motions to seal documents contained in the court's public record. Courts and commentators have increasingly recognized that there is no presumptive right to public access to discovery materials, as discovery rules allow for broad and searching review of a party's files and review of these materials traditionally takes place in private and the documents may never be presented to, or introduced in, a court. George F. Carpinello, Public Access to Court Records in New York: The Experience under Uniform Rule 216.1 and the Rule's Future in a World of Electronic Filing, 66 Alb. L.Rev. 1089, 1095-96. In contrast, documents filed with the court are presumptively relevant to the court's determination and their placement in the public record, which is in control of the parties, puts them in the public sphere. That is not to say that they cannot be taken out of the public sphere by the trial court upon a motion to seal, it is just that, because they are now public records, the standard from taking them out of the public's view is higher than that provided by La. C.C.P. art. 1426 relative to discovery materials. Thus, the trial court erred in treating this motion to seal as a motion for protective order under La. C.C.P. art. 1426. A party's claim of mere "annoyance, embarrassment, oppression, or undue burden or expense" is not enough to overcome the public's right of access to public records.
As stated earlier, Louisiana has a constitutional open courts provision and a constitutional public records provision. Further, no state statute excepts divorce proceedings from either provision. While La. Ch.C. art. 407 provides that proceedings before the juvenile court, with certain exceptions, "shall not be public," the law contains no such provisions with regard to divorce or child custody proceedings which would take such proceedings outside the scope of Art. 1, § 22 or Art. 12, § 3. Likewise, La. C.C. art. 135, which provides that "[a] custody hearing may be closed to the public," provides no basis for closing the courts in this case, as there was no "custody hearing" involved. Thus, as we inherently held in Copeland I, this constitutional right of access extends to civil divorce proceedings. Copeland, supra at 941.
However, that being said, even without a statute exempting certain court proceedings *1046 and documents from public review, the constitutional right of access is not unlimited. Article 1, § 5 of the Louisiana Constitution, which provides, in part, that "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy," protects certain documents and information from disclosure. We have defined the right to privacy as "the right to be `let alone,' . . . and to be free from `unnecessary public scrutiny.'" DeSalvo v. State, 624 So.2d 897, 901 (La.1993), cert. denied, 510 U.S. 1117, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994). In Bester, supra, we noted that, in addition to the specific statutory exceptions found elsewhere, the protection provided by Art. I, § 5 has prevailed over the public's right to know and has protected certain documents and information from disclosure. Bester, supra at 720 (citing Trahan v. Larivee, 365 So.2d 294 (La. App. 3 Cir.1978), writ denied 366 So.2d 564 (La.1979)).
We have also "defined the limits on the right to privacy [as follows]: `the right to privacy is not absolute; it is qualified by the rights of others . . . The right of privacy is also limited by society's right to be informed about legitimate subjects of public interest.'" Plaquemines Parish Comm. Council v. Delta Development Co., Inc., 472 So.2d 560, 567-68 (La.1985) (citing Parish Nat'l Bank v. Lane, 397 So.2d 1282, 1286 (La.1981)). As this Court pointed out in Lane, "[i]ndividuals involved in civil litigation may be compelled to give evidence which tends to embarrass them or to produce documents of a confidential nature." 397 So.2d at 1286.
In the context of divorce proceedings, commentators have noted that other state courts have handled access to divorce proceedings in different ways:
Some courts have applied the common-law rule to prevent those not having a legitimate interest in the divorce proceedings from having access to the entire record, while other courts cited statutes mandating the sealing of divorce records. In some cases involving the custody of children, courts have denied access to the divorce records to protect the children. Courts have also held a number of documents and types of information not to be subject to disclosure in relation to divorce proceedings, including financial information and paternity results. Furthermore, a state court may seal the record until the divorce decree has been entered in order to encourage conciliation.
Recently, however, the practice of closing divorce proceedings has been changing to allow the public more access in divorce cases. Privacy interests no longer mandate closure of these proceedings in many jurisdictions, although they are still relevant in balancing the interests involved in disclosure. When all factors are equal, the right of access will prevail despite the parties' privacy interests. Several courts have also permitted access to records obtained in divorce proceedings, including financial information. Moreover, the salaciousness of the details in the divorce records has not been sufficient by itself to prevent disclosure in some states.
Peltz, Leonard, and Andrews, supra at 608 (cites omitted).
Because Louisiana law provides a constitutional right of access to public records and a constitutional open courts provision, and because there is no statutory law exempting divorce records and proceedings from this right of access, a balancing test must be employed. Thus, in this case, we framed the balancing test to be undertaken *1047 by the trial court in analyzing the competing constitutional rights as follows:
Considering the strong constitutional bias in favor of open access by the public to court proceedings, we find the trial court's blanket order sealing the entire record in this case to be overbroad. Although there may be some justification for sealing certain sensitive evidence in a proceeding, the parties have the burden of making a specific showing that their privacy interests outweigh the public's constitutional right of access to the record. The trial court, should it grant such relief, must ensure that its order is narrowly tailored to cause the least interference possible with the right of public access.
Copeland, supra at 941. This balancing test properly subjects the parties' request to have the record sealed to the trial court's discretion, which has supervisory power over its own records and files, placing the burden of proof on the parties seeking closure, and balancing the parties' privacy interests against the public's constitutional rights of access to court proceedings and documents.
At the hearing on remand on the joint motion to seal, counsel for the Copelands urged their concern for the emotional well being of their children, as well as their physical safety, alluding that the sealed documents contained the custody arrangements and the financial arrangement between the Copelands. That was basically the extent of their showing that "their privacy interests outweigh[ed] the public's constitutional right of access to the record." Id.[6] Based upon that showing, the trial court again sealed the record, with the exception of one pleading, finding that "sealing the record is meant to protect the children from the public, to shield them from embarrassment, ridicule, and derision of their peers and from the unwanted scrutiny of unscrupulous strangers whose knowledge of the finer details of the children's custody and visitation arrangements might enable them to do the children harm."
We agree that the Copelands have a constitutionally protected privacy interest relating to the safety and protection of their children. This privacy interest is both subjective and objective, in that an expectation in the protection and safety of the children of divorcing parents is "of a type which society at large is prepared to recognize as being reasonable." Capital City Press v. East Baton Rouge Parish Metropolitan Council, 96-1979 (La.7/1/97), 696 So.2d 562, 566.[7] If disclosure of certain *1048 information would imperil the safety of the Copeland children, then the Copeland's interest in keeping this information private would outweigh the public's right of access to this information.[8]
Thus, we have reviewed the sealed documents to determine if they contain any information which would jeopardize the children's safety, such that the children's privacy interests outweigh the public's right of access to the court's records. Upon review, we find that these documents do contain general information about custody and financial arrangements regarding the children, but that the vast majority of the information, if released, would not impinge on the safety or security of the children. In fact, the custody information is not specific enough to inform anyone where the children might be at any particular time. As we ordered in Copeland I, if relief was to be granted because a privacy interest was shown that outweighed the public's constitutional right of access to the record, it must be "narrowly tailored to cause the least interference possible with the right of public access." Id. The court's order sealing six of the seven substantive pleadings filed in the case was not "narrowly tailored" and is once again too broad. Redaction of the record, rather than sealing, is the appropriate method of protecting the children in this case. Accordingly, we order the entire record unsealed, with redaction of the following information: (1) the name of the children's school; and (2) the location of the family home.

DECREE
For the reasons stated herein, the judgment of the trial court is reversed and the case is remanded for further proceedings in accordance with this ruling.
REVERSED AND REMANDED.
JOHNSON, J., concurs and assigns reasons.
JOHNSON, Justice concurring in the result:
Does a litigant abandon all privacy rights when a lawsuit is filed in the court system?
Historically, court proceedings and records have been open and available to the public. The First Amendment of the United States Constitution guarantees the press the right to report judicial records. See, Barron v. Florida Freedom Newspapers, Inc., 531 So.2d 113 (Fla.8/25/88); State ex. rel. Highlander v. Rudduck, 103 Ohio St.3d 370, 816 N.E.2d 213 (Ohio 9/23/04); Lutz v. Lutz, 20 Media L. Rep. 2029, 1992 WL 440989 (Mich.Cir.Ct.1992); See also, Restricting Public Access to Judicial Records of State Courts, 84 ALR 3d 598 (1978), which suggests that the First Amendment has been held not to give the press a greater right of access to judicial records than the public generally. Grand Forks Herald, Inc. v. Lyons, 101 N.W.2d 543 (N.D.1960). The United States Supreme Court explained that "public access . . . is one of the numerous checks and balances of our system, because contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." Richmond Newspapers, Inc. v. Va., 448 U.S. 555, 592, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980).
The significance of the public's right of access is to enhance the public's trust in the fairness of the judicial system,[1] to promote *1049 public participation in the workings of government,[2] and to protect the constitutional guarantees of freedom of press and a defendant's right to a fair trial.[3]
The framers of the Louisiana Constitution were equally clear in expressing the public's right of access to the courts in LSA-Const. Art. I, § 22, which provides that "All courts shall be open . . .". The public's right of access to public records is further guaranteed by the Louisiana Constitution in LSA-Const. Art. XII § 3, which provides that:
No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law.[4]
The drafters of the Constitution intended "to establish a presumption in favor of openness, except where a specific statutory limitation was created." St. Mary Anesthesia Associates, Inc. v. Hospital, 01-2852 (La.App. 1 Cir. 12/20/02), 836 So.2d 379, 383, writ denied, 03-0220 (La.3/28/03), 840 So.2d 577. The purpose of LSA-Const. Art. XII § 3 is to ensure the public's right of access to deliberations of public bodies and to protect the public from secret decisions made without the opportunity for public input.
This right of access to courts applies equally to all cases, including divorce cases, in order to ensure that proceedings are conducted fairly to all concerned, to satisfy the people's right to know what happens in their courts, and to serve as a check on corrupt practices by exposing the judicial process to public scrutiny. See, Globe Newspaper Co. v. U.S., 517 U.S. 1166, 116 S.Ct. 1564, 134 L.Ed.2d 664(1996) (Mem).
Under the Public Records Doctrine, "public records" is defined in LSA-R.S. 44:1(2) as:
All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of any ordinance, regulation, mandate, or order of any public body . . ., except as otherwise provided in this Chapter or as otherwise specifically provided by law.
This Court has already determined that "court records" falls within the definition of "public records" under the Public Records Act. See, Title Research Corporation *1050 v. Rausch, 450 So.2d 933, 937(La.1984). Any person of the age of majority may inspect, copy, or reproduce or obtain a reproduction of any public record. LSA-R.S. 44:31.
While the constitutional right of access to court records is broad, it is not absolute. The Louisiana Constitution empowers the legislature to establish exceptions to this right to access public documents. Kyle v. Perrilloux, 02-1816 (La.App. 1 Cir. 11/7/03), 868 So.2d 27. When there is a request for public records, the individual challenging the disclosure must prove that there is a reasonable expectation of privacy to prevent the disclosure of the information. Capital City Press, 96-1979 (La.7/1/97), 696 So.2d 562, 566; East Bank Consolidation Special Service Fire Protection Dist. v. Crossen, 04-838 (La.App. 5 Cir. 12/28/04), 892 So.2d 666, writ denied, 05-212 (La.4/1/05), 897 So.2d 608.
In determining whether the sealing of a record is appropriate, a court must first determine whether there is a privacy interest. If the court finds that there exists a reasonable expectation of privacy, then, it must weigh or balance the public's right to know against the privacy interest. Capital City Press, supra. To determine whether there is a privacy interest, the court must consider not only whether the person had an actual or subjective expectation of privacy, but also whether that expectation is of a type which society, at large, is prepared to recognize as being reasonable. Id., (quoting State v. Ragsdale, 381 So.2d 492, 497 (La.1980)); Hilbun v. State ex rel. Div. of Admin., 98-1993 (La.App. 1 Cir. 11/5/99), 745 So.2d 1189.
LSA-Const. Art. I § 5 provides, in pertinent part, that:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.[5]
See, Bester v. La. Supreme Court, 00-1360 (La.2/21/01), 779 So.2d 715, 720 (La.1979); State v. Perry, 610 So.2d 746, 755-56 (La. 1992).
Although the law in most states favors the openness of court proceedings, most states close, or limit access[6] to the proceedings for "good cause shown."[7] The *1051 public and the press have been excluded where the testimony of the defendant or witnesses was of a nature that it could not be freely and completely presented to the public without serious detrimental effects to the "fair trial" concept;[8] where the testimony involved trade secrets;[9] where the best interests of a child demand protection;[10] and in juvenile proceedings.[11] The United States Supreme Court has recognized that parties may have privacy interests in the information produced during the litigation, which should be protected by ensuring confidentiality when the parties can demonstrate good cause for doing so.[12]
There are many reported instances where the court records of a divorce proceeding have been sealed to the public.[13]
*1052 Hugh Alan Ross writes in Closing Divorce Trials and Records: A Specific Proposal, 14 Cap. U.L.Rev. 81, 93 (1984-85), that there are three basic reasons to seal record and hearings in divorce proceedings:
1)The concept of family privacy not only enjoys constitutional protection, but has intrinsic value and deserves protection by the state which creates the divorce process.
2) If divorce cases are not sealed the openness of the process tends to exacerbate the already bitter and emotional nature of the proceeding, by inviting false or exaggerated charges of misconduct, or the malicious revelation of private matters.
3) The openness of the existing process has a chilling effect, because prospective litigants may prefer to suffer wrongs in silence rather than expose intimate details of family life to public view.
The parent-child relationship, a constitutionally protected relationship, comes under scrutiny by the court in any divorce case in which there are children.[14] The courts have noted that information discovered in a divorce proceeding can be used to embarrass or threaten a child. Our role as a court is to perform a balancing exercise, weighing issues of confidentiality and the citizen's privacy interests, against freedom of speech and the public right to be informed on matters of public interest. The right to inspect judicial records should not trump the individual's privacy rights, especially where the purpose is to gratify spite, promote public scandal, or to publicize the embarrassing details of a divorce case. Nixon v. Warner Communications, 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978).
Redaction of the record is an alternative to closing the proceeding and sealing the entire record from the public. The New Hampshire Supreme Court ordered financial affidavits disclosed subject to redactions when a member of the public requested access to court records filed under seal.[15] In Douglas v. Douglas, 146 N.H. *1053 205, 772 A.2d 316 (2001), where Douglas argued that the threat of identity theft supported non-disclosure of the financial affidavits, the court held that financial affidavits were not exempt from public disclosure. In that case, the court redacted certain information "cognizant of the privacy interests of the parties" to guard against any potential misuse. Id. at 208, 772 A.2d 316.
However, in Associated Press, et al. v. State of New Hampshire, 153 N.H. 120, 888 A.2d 1236 (2005), the New Hampshire Supreme Court struck down a statute, which automatically sealed financial affidavits in domestic relations cases, on the grounds that the state interest in protecting citizens from identity theft was not narrowly tailored. Id. at 1253. In 2003, the Connecticut Law Tribune, an ALM Media publication, discovered a "super-secret docketing system" that permitted prominent individuals involved in divorce cases and other civil matters to receive special treatment.[16] As a result of the controversy, the Connecticut judiciary set standards for closing hearings and sealing records, requiring the judge to articulate the reasons for such actions. Id.
In Firestone v. Time, Inc., 271 So.2d 745 (Fl.1972),[17] a divorced wife sued a magazine for defamation when the magazine published an article stating that her divorce was granted on grounds of "extreme cruelty and adultery." The court held that the article, although noteworthy because one of the parties had received nationwide publicity, was not constitutionally protected as relating to matters of real public concern. The court distinguished between mere curiosity or the "intrigue with scandal or with potentially humorous misfortune of others" and real public concern, noting that public concerns are matters relating to public, private, or governmental affairs, of public officers, public servants, employees or candidates for public office. Id. at. 748. The court also noted that if a public figure is a subject of public interest, the figure cannot suddenly become less so merely because a private interest is involved. Id. at 749. The court further noted that a public figure is one who makes his living by dealing with the public or otherwise seeks public patronage, i.e., consciously wants the public support for his activities; therefore, he "submits his private character to the scrutiny of those whose patronage he implores." Id. at 750.
In the case sub judice, Mr. Copeland, in my view, is a "public figure," subject to public scrutiny. Unfortunately, the former Mrs. Copeland, by her marriage to a public figure, is subject to the same public scrutiny of their private affairs. Therefore, the spouses' privacy interests do not outweigh the strong fundamental right of the public to access the court's records.
However, in this case, there are minor children, whose interests are definitely involved in this proceeding.[18] The minor *1054 children cannot be described as "public figures." As the trial court correctly stated, the court has a duty to act as a fiduciary on behalf of the minor children, as their safety may be compromised by disclosure of certain sensitive information in a divorce/custody matter.
After reviewing the sealed documents, it is my opinion that there is nothing unusually private about these documents, as they contain usual information. The safety interest and security of the children should be this Court's primary focus. Where appropriate, instead of sealing the record, the court may order that certain information be redacted from the record so as not to intrude on the public's right of access and at the same time protect the person's privacy interest. Doe v. Shady Grove Adventist Hospital, 89 Md.App. 351, 598 A.2d 507 (1991).
Recognizing that the public has no right to access the whereabouts of the children, I would redact the information regarding the children's school and the children's residence address. In all other respects, I would deny the Motion to Seal Court Records.
NOTES
[1] The Supreme Court's jurisprudence on these issues is summarized as follows. In Nixon, supra, a case involving the press's right of access to tapes that had been admitted into evidence in the Watergate trial, the Court held that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." 435 U.S. at 597, 98 S.Ct. 1306. In Nixon, the Court expressly rejected the idea that the press had a First Amendment right to inspect and copy the tapes, holding that the press did not have a right of access superior to that of the general public. 435 U.S. at 608-611, 98 S.Ct. 1306. In Gannett, Co. v. DePasquale, the Court appeared to be split on whether the press had a First Amendment right to access pretrial hearings. 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). One year later, in Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the Court held that the First Amendment included a right to attend criminal trials. However, the plurality's seven separate opinions created confusion about the definition and scope of that right. In Globe Newspapers Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), involving the mandatory closure of a rape trial during a minor's testimony, the Court held that mandatory closure violated the First Amendment right of access. The Court recognized that the right of access was not absolute and set forth that the closure must be necessitated by a compelling governmental interest, and must be narrowly tailored to serve that interest. 457 U.S. at 607, 102 S.Ct. 2613. See also Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) ("Press-Enterprise I") (finding a First Amendment right of access to criminal pretrial jury selection and holding that the strict scrutiny test applied to attempts to close jury selection). The last word from the Supreme Court on this issue came from Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) ("Press-Enterprise II"), where the Court, relying on "experience and logic," held that the public has a qualified First Amendment right of access to preliminary hearings in a criminal case. Commentators have remarked that the lack of clear guidelines in the field of public access had led to confusion and inconsistent outcomes by lower courts. Richard J. Peltz, Joi L. Leonard, Amanda J. Andrews, The Arkansas Proposal on Access to Court Records: Upgrading the Common Law with Electronic Freedom of Information Norms, 59 Ark L.Rev. 555 (2006).
[2] Not all states have open court provisions in their constitutions. Those others that do provide a variety of access rights ranging from a qualified right to a nearly absolute right: Ala. Const. art. I, § 13; Colo. Const. art. II, § 6; Conn. Const. art. I, § 10; Del. Const. art. I, § 9; Fla. Const. art. I, § 21; Idaho Const. art. I, § 18; Ind. Const. art. I, § 12; Ky. Const. § 14; Miss. Const. art. III, § 24; Mont. Const. art. II, § 16; Neb. Const. art. I, § 13; N.C. Const. art. I, § 18; N.D. Const. art. I, § 9; Ohio Const. art. I, § 16; Okla. Const. art. II, § 6; Or. Const. art. I, § 10; Pa. Const. art. I, § 11; S.D. Const. art. VI, § 20; Tenn. Const. art. I, § 17; Tex. Const. art. I, § 13; Utah Const. art. I, § 11; W.Va. Const. art. III, § 17; Wyo. Const. art. I, § 8.
[3] Federal courts have differing views on what constitutes a "judicial record." The Seventh Circuit Court of Appeals has held that judicial records are not limited to evidence but applies to anything the court relied on to determine substantive rights. Smith v. U.S. District Court for the Southern District of Illinois, 956 F.2d 647, 650 (7th Cir.1992). Accord F.T.C. v. Standard Financial Management Co., 830 F.2d 404, 409, 412-13 (1st Cir.1987). The Sixth Circuit has held that a transcript that had not been admitted into evidence was not a judicial record. U.S. v. Beckham, 789 F.2d 401, 411 (6th Cir.1986). The Third Circuit held that documents submitted to the court but not physically on file with the court and returned to the parties after closure of the case were not judicial records. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 781-82 (3rd Cir.1993). Finally, the Second Circuit has held that the mere filing of a document is insufficient to make it subject to a presumption of access; the court must actually rely on that document in the course of performing its judicial functions. United States v. Amodeo, 44 F.3d 141 (2nd Cir.1995); United States v. Amodeo, 71 F.3d 1044 (2nd Cir.1995).
[4] The Court did specifically note that "common-law right of inspection has bowed before the power of a court to insure that its records are not `used to gratify private spite or promote public scandal through the publication of the painful and sometimes disgusting details of a divorce case.'" Id. (Cites omitted).
[5] See Peltz, Leonard, and Andrews, supra at 591-603 for a discussion of the various approaches state courts have used in determining the right of access to judicial proceedings, applying either the common law, their constitutions, the U.S. Constitution, and state statutory law to determine the right of access.
[6] The trial court seemed to excuse this lack of proof, stating "I understand the position, it's hard to argue, articulate the need for privacy without letting the cat out of the bag."
[7] Capital City Press involved a newspaper's right of access to resumes for public employment. We held that "Article I, Section 5 of the Constitution applies only where one has a reasonable expectation of privacy in the matter sought to be protected." Further, we held that "[t]he test for determining whether one has a reasonable expectation of privacy which is constitutionally protected `is not only whether that person had an actual or subjective expectation of privacy, but also whether that expectation is of a type which society at large is prepared to recognize as being reasonable.'" Id. at 566, 567 (citing State v. Ragsdale, 381 So.2d 492, 497 (La.1980); State v. Harper, 27,278 (La.App. 2 Cir. 8/23/95), 660 So.2d 537, 547, writ denied, 95-2318 (La.1/12/96), 666 So.2d 320). We held that an applicant for public employment had no constitutionally protected right to privacy in his resume because statutory law did not exempt such resumes from the public records law and because "the resumes at issue have not been shown to contain facts which would expose the applicants to public disgrace or would intrude upon the applicant's seclusion, solitude, or private affairs." Id. at 568-69. Thus, there was no need to balance the conflicting constitutional rights in that case. Id.
[8] On the other hand, Mr. Copeland has made no showing that he has a expectation of privacy in his financial information that is constitutionally protected or that would outweigh the public's right of access to this information.
[1] United States v. Hickey, 767 F.2d 705, 708 (10th Cir.1985).
[2] William v. Stafford, 589 P.2d 322, 325 (Wyo. 1979).
[3] Globe Newspaper v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); Richmond Newspapers v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980);
[4] This access to court proceedings and court records applies in all cases except juvenile proceedings which remain closed to the public in order to protect the juveniles involved. LSA-Ch.C. Art. 407.

LSA-Ch.C. Art. 412 provides that:
Records and reports concerning all matters or proceedings before the juvenile court, except traffic violations, are confidential and shall not be disclosed except as expressly authorized by this Code. Any person authorized to review or receive confidential information shall preserve its confidentiality in the absence of express authorization for sharing with others.
[Emphasis added.]
[5] This Court held that the right of privacy is not absolute, yet it is qualified by the rights of others and also limited by society's right to be informed about legitimate subjects of public interests. Plaquemines Parish Commission Council v. Delta Development Company, Inc., 472 So.2d 560 (La.1985).

Only Louisiana. Montana, New Hampshire, and North Dakota provide explicit constitutional right of access provisions in the state constitution. See, Larry M. Elison and Deborah E. Elison, Comments on Government Censorship and Secrecy, 55 Mont. L.Rev. 175, 189 (1994).
[6] Press-Enterprise Co. v. Superior Court of Cal., 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986).
[7] A case worth noting is Estate of Hearst, 67 Cal.App.3d 777, 136 Cal.Rptr. 821 (1977), where the court rejected the newspaper's argument that the court's order sealing the probate files of this well-known family constituted a prior restraint on their First Amendment rights to gather and publish information in the public domain. The court held that the order to seal did not operate as a prior restraint, since neither the press nor the reporters were named in the protective order and thus, were not directly restrained from publishing information.

In C. v. C, 320 A.2d 717, 84 A.L.R.3d 581 (Del.Supr.1974), the court held that where a newspaper requested to inspect the divorce records of an elected state official, the constitutional provision guaranteeing freedom of press to every citizen who undertakes to examine the official conduct of those acting in a "public capacity" was not abridged by a restriction of access in matters of divorce.
In Davis v. Davis, 107 N.Y.S.2d 460 (N.Y.Sup.1951), affd., 279 A.D. 865, 110 N.Y.S.2d 904 (N.Y.A.D. 1 Dept.1952), the press was granted the right to fully report the matters appearing in a public court record where the husband in a separation action sought to have the court seal his divorce record since the record would portray the parties' marital problems and present the wife in an unfavorable light. In Tomlinson v. Tomlinson, 338 Mich. 274, 61 N.W.2d 102(Mich.1953), the court sealed in a divorce proceeding all documents relating to the husband's financial status where the husband maintained that until the divorce decree was granted his privacy should be protected.
[8] Globe Newspapers Co., 457 U.S. at 606-08, 102 S.Ct. 2613.
[9] Megapulse Inc. v. Lewis, 672 F.2d 959 (D.C.Cir.1982).
[10] Whitney v. Whitney, 164 Cal.App.2d 577, 330 P.2d 947 (1958).
[11] In re Gault, 387 U.S. 1, 25, 87 S.Ct. 1428, 1442, 18 L.Ed.2d 527(1967).
[12] Seattle Times Co. v. Rhinehardt, 467 U.S. 20, 24-25, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).
[13] In In re Caswell, 27 L.R.A. 82, 18 R.I. 835, 29 A. 259 (1893), where a reporter requested to inspect and copy all of the proceedings in a divorce matter, the court held that:

. . . no one has a right to examine or obtain copies of public records, for mere curiosity, or for the purpose of creating public scandal. To publicly broadcast the painful . . . details of a divorce case not only fails to serve any useful purpose in the community, but . . . directly tends to the demoralization and corruption thereof, by catering to a morbid craving for that which is sensational and impure.
Id. at 259.
In Holcombe v. State ex. rel. Chandler, 240 Ala. 590, 200 So. 739 (1941), a newspaper sought to copy all the records in a divorce matter, the court noted that although the newspaper has a right to inspect public records to acquire material for the purposes of selling news, that right does not extend to the records of a divorce case.
In Tomlinson v. Tomlinson, 338 Mich. 274, 61 N.W.2d 102 (1953), the court determined that the husband should not be required to subject his financial affairs to public scrutiny. In Peyton v. Browning, 541 So.2d 1341 (Fla. DCA 1989), where creditors sought access to the husband's financial affidavit in the sealed divorce file, the court held that the husband's privacy rights as it related to his financial records outweighed the private party's right to access the record.
In Katz v. Katz, 356 Pa.Super. 461, 514 A.2d 1374 (1986), the Pennsylvania Superior Court considered the propriety of a trial court's decision to hold proceedings on the economic aspects of a divorce ("equitable distribution") in open court as requested by Mrs. Katz, rather than in closed session as requested by Mr. Katz. The appellate court overruled that trial court and closed the hearing, acknowledging the general right of access to divorce proceedings and the need to show good cause to close such proceedings. The court noted that:
Trials of divorce issues frequently involve painful recollections of a failed marriage, details of marital indiscretions, emotional accusations and testimony which if published, could serve only to embarrass and humiliate the litigants. While the public has a right to know that its courts of justice are fairly carrying out their judicial functions, no legitimate public purpose can be served by broadcasting the intimate details of a soured marital relationship. Similarly, the public can have little, if any, legitimate interest in identification, evaluation, and distribution of private property which the marriage partners have accumulated while they lived together and cohabitated. Merely because . . . property has been accumulated because of the financial successes achieved by an astute businessman does not alone justify opening equitable distribution hearings, to the public.
Id. at 1379-80.
In contrast, Barron v. Florida Freedom Newspapers, Inc., 531 So.2d 113 (Fla.1988), the Supreme Court of Florida, noted that:
Closure of court proceedings or records should occur only when necessary (a) to comply with established public policy set forth in the constitution, statutes, rules or case law; (b) to protect trade secrets; (c) to protect a compelling government interest . . .; (d) to obtain evidence to properly determine legal issues in a case; (e) to avoid substantial injury to innocent third parties [e.g. to protect young witnesses from offensive testimony, to protect children in a divorce]; or (f) to avoid substantial injury to a party by disclosure of matters protected by a . . . privacy right not generally inherent in the specific type of civil proceeding sough to be closed.
Id. at 118.
[14] Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).
[15] In Keene Sentinel, 136 N.H. 121, 612 A.2d 911 (1992), a newspaper petitioned for access to the sealed divorce files of an incumbent congressional candidate, and the lower courts refuse to unseal the records, ruling that the newspaper failed to present evidence as to why the balance of interests favored the public access over the individual privacy. Id. at 128, 612 A.2d at 915-16. The court noted that:

there is a presumption that court records are public and the burden of proof rests with the party seeking nondisclosure of court records to determine with specificity that there is some overriding consideration . . ., that is sufficiently compelling interest, which outweighs the public right of access to those records.
Id. at 128, 612 A.2d 911.
[16] Tresa Baldas, Sealing Divorce Records for the Sake of . . . Corporations, The National Law Journal (Nov. 15, 2005).
[17] The judgment in this case was vacated on other grounds. See, Time, Inc. v. Firestone, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976).
[18] In Reinhardt v. Reinhardt, 97-1889 (La. App. 1 Cir. 9/25/98), 720 So.2d 78, 79, writ denied, 98-2697 (La.12/18/98), 734 So.2d 635, the court noted that:

The well-being of its children is of course a subject within the [s]tate's constitutional power to regulate. . . . The state regulates parental rights in many areas: for example, child custody, child visitation, child labor, schooling, and health. Additionally, when analyzing the effect of a regulation on the rights of parents to privacy in family decisions and child rearing, the interest and rights of the children and relatives should also be considered and balanced.
(Citation omitted)