BROWN, Chief Judge.
11 David Anthony Szwak appeals from a trial court judgment awarding, inter alia, him and Samantha Earnest Szwak joint custody of their two minor children, with Samantha being named domiciliary parent. For the reasons stated herein, the judgment of the trial court is affirmed in part and reversed in part.

Facts and Procedural Background

This consolidated appeal consists primarily of a custody dispute between David Anthony^ Szwak (“David”) and Samantha Earnest Szwak (“Samantha”) (trial court no. 114,695, 26th JDC, Bossier Parish). David and Samantha married in 1998 and divorced in 2004; two children were born of this marriage, a daughter, SES (who is currently 15), and a son, SJS (who is currently 12). In accord with an interim order and a subsequent joint custody plan recommendation devised by Dr. Susan Vi-gen, Ph. D., a court appointed mental health evaluator, David and Samantha maintained joint custody and co-domiciliary status over the children. This agreement stayed in place without issue until 2009, at which time the trial court, in response to petitions filed by both parties to establish custody, appointed a parenting coordinator and the parties agreed to a slightly modified interim custody schedule.
On May 12, 2012, David was arrested for committing a battery upon JDS, his 17-year-old son, from a prior marriage. David allegedly slapped JDS across the face and hit him with an umbrella. David was found not guilty in the matter of State v. David Anthony Szwak (trial court no. 194,129, 26th JDC, Bossier Parish). This trial was before a different judge Ethan the judge handling the domestic matters. The judge in the criminal matter concluded that David’s actions were appropriate, as the 17-year-old boy was aggressively cursing his father. Using this incident, on May 16, 2012, Samantha filed her third petition for protection from abuse against David (trial court no. 139,040, 26th JDC, Bossier Parish). Two prior petitions for protection from abuse filed by Samantha had been dismissed. David alleges that these petitions were lodged to disrupt his previously scheduled vacations with the children. On May 23, 2012, David filed a motion for dissolution of the protective order (trial court no. 139,040, 26th JDC, Bossier Parish), as well as a reconventional demand seeking increased physical custody of the children.
As to the protective order action, the trial court conducted three hearings in May and June of 2012. In a written judgment filed on July 5, 2012, the trial court granted a final protective order against David after finding him to be “a credible threat to the physical safety of’ Samantha and their two minor children. Under the order of protection, David was limited to supervised visitation following, inter alia, an evaluation by a domestic violence specialist. Over the next two years David was limited to supervised visitation of varying degrees.
Coinciding with the protective order proceedings, on May 23, 2012, David filed a pleading in the divorce proceeding (trial court no. 114,695) styled “Motion and Rule to Show Cause for Various Relief.” In this motion, David asserted reconventional demands against Samantha in response to *914 her petition for protection from abuse, as well as a request for additional visitation with the children. In response, Samantha filed a reconventional | ¡¡demand seeking sole custody of the children and the appointment of a mental health professional to conduct an evaluation pursuant to La. R.S. 9:331. On June 20, 2012, a consent judgment was rendered appointing Dr. Richard Williams to perform a mental health evaluation of David, Samantha, and the children. Dr. Williams was also ordered to supply the court with a written report of his findings, conclusions, and recommendations as to custody.
In the following months, David filed an amended petition seeking, among other things, an increase in visitation, and two supplemental petitions seeking an ex parte order of temporary custody. David’s supplemental petitions were based upon his claims' that Samantha’s actions presented a danger of immediate and irreparable harm to their children and that they would be safer in his custody. The actions referenced in these supplemental petitions are: (1) Samantha’s January 31, 2013, car crash and subsequent arrest for driving while intoxicated;[1] and (2) SJS’s breaking of his femur bone while riding an ATV under Samantha’s supervision. The ex parte orders of temporary custody sought were denied by the trial court and the subsequent supervisory writs sought by David were denied by this court.
On April 8, 2013, the trial court entered an order consolidating the child custody proceedings in trial court no. 114,695 with the protective order proceedings in trial court no. 139,040. For purposes of this appeal, we note that on January 7, 2014, David filed a motion to vacate the protective 14 order. The trial court deferred consideration of this motion to the merits to be determined at the conclusion of the child custody trial.
On August 13, 2013, the child custody litigation began. The matter was heard on 11 occasions over a period of 10 months and consisted of testimony from 14 witnesses. The trial court limited each side to a total of 25 hours of witness examination. On October 7, 2014, the trial court rendered its written opinion awarding the parties joint custody of the children and designating Samantha as the domiciliary parent. Additionally, the trial court denied David’s requests to vacate the final order of protection and to seal the record in its entirety. All costs of the proceedings were assessed to David. Final judgment and the joint custody implementation plan (“JCIP”) were signed by the trial court on November 6, 2014.
Now appealing, David has raised the following five issues: (1) whether an award of sole custody in favor of David is in the best interest of the minor children; (2) whether, alternatively, it is in the best interest of the minor children to spend more custodial time with David; (3) whether the July 5, 2012, judgment of final protective order should be vacated; (4) whether David should have been assessed with all costs of these proceedings; and, (5) whether the court should have ordered that the record of these proceedings be sealed.

Discussion

Best Interest of the Child

In his first assignment of error David seeks to be awarded sole custody, and in his second, he alternatively seeks an increase in the amount of custodial time.
*915 The paramount consideration in any determination of child custody is always the best interest of the child. La. C.C. art. 131; Chandler v. Chandler, 48,891 (La.App.2d Cir.12/13/13), 132 So.3d 413; Semmes v. Semmes, 45,006 (La.App.2d Cir.12/16/09), 27 So.3d 1024. The court is to determine all relevant factors in determining the best interest of the child. La. C.C. Art. 134; Lawson v. Lawson, 48,296 (La.App.2d Cir.07/24/13), 121 So.3d 769. Factors that may be considered are set forth in article 134; but the court is not bound to make a mechanical evaluation of each. Id. Instead, a custody dispute must be decided in light of its peculiar set of facts and the relationships involved by weighing and balancing those factors favoring and opposing custody for the respective parents in order to reach a decision that is in the best interest of the child. Manno v. Manno, 49,533 (La.App.2d Cir.11/19/14), 154 So.3d 655; Walker v. Walker, 38,982 (La.App.2d Cir.08/18/104), 880 So.2d 956.
David contends that he showed by clear and convincing evidence that sole custody in his favor was in the best interest of the children. He argues that the trial court merely “cherry picked” certain facts to support joint custody instead of engaging in a considered analysis of the factors set forth in La. C.C. art. 134.
Alternatively, David argues that the trial court abused its discretion in failing to assure the children substantial and continuing contact with him as required by La. R.S. 9:335(B)(2). He contends that, while there is no bright line rule, an award of less than 100 days' of custody during a year does not assure frequent and continuing contact.
16In a decree of joint custody, the non-domiciliary parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents. La. R.S. 9:335(B)(2). So long as “the child is assured of frequent .and continuing contact with both parents,” the primary goal. of joint custody is met. La. R.S. 9:335(A)(2)(a) and (B)(2). When the trial court finds that a decree of joint custody is in the best interest of the child, an equal sharing of physical custody is not necessarily required. Langford v. Langford, 49,080 (La.App.2d Cir.04/09/14), 138 So.3d 101; Stephenson v. Stephenson, 37,323 (La.App.2d Cir.05/14/03), 847 So.2d 175. Substantial time rather than strict equality of time is mandated by the legislative scheme providing for joint custody of children. Chandler, supra.
A trial court’s determination of child custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. C.M.J. v. L.M.C., 14-1119 (La.10/15/14) 156 So.3d 16; Manno, supra; Chandler, supra. An appellate court should be reluctant to interfere with custody plans implemented by the trial court in the exercise of its discretion. See Mulkey v. Mulkey, 12-2709 (La.05/07/13), 118 So.3d 357; Gerhardt v. Gerhardt, 46,463 (La.App.2d Cir.05/18/11), 70 So.3d 863.
Over a period of 11 days, the trial court heard testimony from the parties, their children, expert witnesses, and multiple character and fact witnesses. Due to the level of acrimony expressed by David and Samantha through their actions and during their respective testimonies, the trial court afforded their testimony little weight in making its determination of what is in the best interest of the minor children. Instead, the trial court relied heavily on the testimony and desires of the children, as well as the ^testimony of the three expert witnesses, in making its custody determinations.
*916 The trial court considered the factors set forth in La. C.C. art. 134, and the relevant findings of the trial court were that:
Drs. Vigen and Williams both described how David’s relationship with the children is highly conflicted and stressful, with the children feeling that they are being forced to visit and/or talk with David. The children have more of an emotional attachment to Samantha as she is more relaxed and less control-oriented.
The trial court found that David’s testimony and actions during the proceedings showed that he placed a great deal of importance on athletics in the lives of SES and SJS (particularly SJS). This emphasis was to the detriment of the children’s growth and development in other areas and, in the trial court’s opinion, “seem[ed] to limit his capacity to show love and affection to the children through his coaching of them in local sports.”
At the conclusion of the trial, the final protective order had been in place for over two years. During that span of time the children resided primarily with Samantha, with David afforded limited supervised visitation. The children expressed their desire to maintain a similar living arrangement; specifically, they stated that they would prefer limited visitation with David at the times of their choosing.
The testimony and evidence adduced at trial show that both David and Samantha have questionable moral fitness. In addition to her DWI arrest, the evidence showed that Samantha would send or exchange nude [Rand sexually explicit photographs with other men, one of which was found on a cell phone used by her minor daughter.
David, on the other hand, degraded and spoke so ill of Samantha and his other ex-wives in the children’s presence that his daughter found it necessary to surreptitiously record and save some of his rants directed at Samantha.
The trial court did not find the physical health of. either party to be an issue. It considered mental health, however, to be a significant issue in these proceedings.
Dr. Williams, the mental health evaluator appointed by the court, testified as an expert witness and opined on David’s mental health based upon specific testing he conducted and examinations he performed. Dr. Williams testified that David met the criteria for Narcissistic Personality Disorder, which causes him to, among other things, be exploitive, lack empathy, and have a grandiose sense of self-importance and sense of self-entitlement. According to Dr. Williams, because of David’s disorder, SES and SJS were at continued risk of being subjected to David’s unwarranted, unnecessary, and unjustified verbal and emotional attacks.
Dr. Williams’ report and testimony reflect that. Samantha meets the diagnostic criteria for Histrionic Personality Disorder traits. This condition, as testified by the medical experts, causes her to be excessively emotional and attention seeking. In particular, as a result of her condition, Samantha’s interactions with others are often characterized by inappropriate sexually seductive or provocative behavior and a need to surround herself with drama and chaos.
|flThe trial court and the medical experts, particularly Dr. Williams, found that, as a result of their mental health, both David and Samantha demonstrated flaws in their parenting capabilities. Nonetheless, they found that David’s mental issues, specifically his bullying behavior, had a more direct and significant impact on the children.
Both SES and SJS expressed a desire to reside primarily with Samantha and to *917 continue to attend the same school that they had been attending. Both SES and SJS expressed an interest in living with Samantha and only seeing David at times of their choosing. Considering their age and exposure in this case, the trial court gave great weight to their preferences in making its determination.
The parties’ disdain for one another was on full display throughout these proceedings, and apparently much of the children’s lives. David has actively and verbally degraded Samantha to SES and SJS in an effort to persuade them to testify against them mother. He would do such things as preventing them from calling Samantha when they were in his physical custody to intentionally changing pick-up times and locations for visitation with' little or no prior notice.
The trial court believed that if David were the primary custodial parent he would continue to undermine Samantha and take active steps to prevent her from exercising her scheduled visitation.
During these proceedings there were several modified interim orders put into place in order to facilitate more supervised visitation between David and the children. Due to disagreements regarding the terms of the interim orders, particularly the persons ordered to supervise the visitations, |10David refused to participate. The trial court found that these actions directly contradicted his continued pleas to the court for increases in custody, as well as supported Dr. Williams’ assessment of David.
David placed a heavy emphasis on Samantha’s sexually provocative behavior and drug use to argue that she was not capable of providing a safe and wholesome environment for SES and SJS. Regarding Samantha’s inappropriate sexual behavior, the trial court found that while she may push the boundaries of what is appropriate sexual behavior, there was no evidence that her behavior had a direct impact on the children. As for her drug use, Samantha provided the court with medical documentation outlining her ongoing pain management treatment, which included her use of prescribed narcotic medicine under a physician’s supervision. While the use of these prescribed narcotics led to an automobile accident and subsequent arrest for DWI, the trial court found this to be an isolated incident with no direct impact on the children.
While both Samantha and David clearly have parenting deficiencies which adversely affect their children, considering the aforementioned factors and the trial court’s findings, we cannot say that the trial court’s determination to award the parties joint custody and name Samantha as the domiciliary parent was clearly wrong. Moreover, we do not find that the trial court erred in its allocation of custodial time. Considering SES’s and SJS’s ages (currently 15 and 12, respectively) and the great weight given to their preference to reside primarily with Samantha and only see David at times of their choosing, we find the trial court’s allocation of David’s custodial time to be in the best interest of the children. The daughter, being |nolder, is given some latitude in choosing when she wants to visit with David, but is nonetheless ordered to spend a set amount of time in his custody— approximately 70 days a year. The .custody schedule pertaining to the son is more rigid in its application, with David having physical custody approximately 120 days a year, but allowing the son more control over what degree athletics, and David’s participation therein, plays a part in his life.
While there may be no perfect outcome, we find that the trial court did an outstanding job in balancing the best interest of the children with David’s desire for *918 frequent and continuing contact with them. Accordingly, we find David’s assignments of error regarding the best interest of the children to be without merit.
We note that David spent a large portion of his appellate brief attempting to relitigate. the facts and circumstances which comprised the protective order proceedings (trial court no. 139,040). While we take cognizance of the expert testimony, as well as the children’s testimony, attesting to the fact that none feel that David is a physical threat to either SES or SJS, we also realize that the trial court too must have come to such a conclusion; otherwise it would not have afforded David joint custody.

Judgment of Final Protective Order

David contends that the trial court abused its discretion in failing to vacate the July 5, 2012, judgment of final protective order. David’s motion to vacate the protective order was referred to the merits by the trial court. In its reasons for judgment, the trial court stated that it found compelling and sufficient proof for granting the order and wrote, “The protective order terminated when the time for which it was implemented expired. That Mr. | i2Szwak was acquitted of the criminal charges against him does not negate the findings this court made during the Juné 2012 hearing granting a protective order in favor of Ms. Earnest.” We cannot say that the trial court abused its wide discretion in denying David’s motion to' vacate the protective order.

Fees and Costs of the Trial Court Proceedings

Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. La. C.C.P. art. 1920. When a prevailing party is taxed with costs of litigation, it is usually because that party in some way incurred additional costs pointlessly or engaged in conduct which justified an assessment of costs against that litigant. Peacock v. Peacock, 39,950 (La.App.2d Cir.05/04/05), 903 So.2d 506; Spillers v. ABH Trucking Co., Inc., 30,332 (La.App.2d Cir.04/13/98), 713- So.2d 505, writs denied, 98-1313, 98-1327 (La.06/26/98), 719 So.2d 1063, 1287.
David contends that the trial court abused its discretion in assessing all costs associated with these proceedings against him. He argues that since a judgment of joint custody was rendered, both he and Samantha should be considered “prevailing parties.”
Considering the excesses that each party went to in an attempt to sabotage the other party’s relationships with the minor children, in addition to the superfluous motions and arguments foisted upon the trial court, it is a stretch to consider either party a “prevailing party”; Samantha was seeking sole custody, which she did not get, and David was seeking an increase in his visitation, which, as granted, is more than he had post-protective order but less than he was afforded prior to the granting of the protective order. | ^Nonetheless, since the trial court awarded the parties joint custody, regardless of their pointlessly causing the incurrence of additional costs and engaging in conduct which justified an assessment of costs against them, we find that, under the facts and circumstances of this case, the trial court’s assessment of all costs against David is inequitable and, as such, clearly wrong.
The trial court’s reasons for judgment state:
Both parties have attempted to disrupt the visitation schedule, of the other and to gain some level of actual or perceived power or authority through their respective actions or words. While some of *919 the behavior may be actionable under contempt statutes, this court believes any sanction would cancel each other out and, in the interest of justice and equity, the court declines to quantify the parties’ actions through individual sanctions.
This reasoning by the trial court should apply in the casting of costs. Thus, we reverse the assessment of all costs against David and order costs in the lower court to be assessed one-half to each litigant. Costs of this appeal, however, are assessed to David.

Sealing of the Record

The Louisiana Constitution has an “open courts” provision which mandates that all courts shall be open. La. Const. Art. 1, § 22. Additionally, La. Const. Art. 12, § 3 provides that no person shall be denied the right to observe the deliberations of public bodies and to examine public documents, except in cases established by law. The right of access to public records is to be liberally construed in favor of unrestricted access. When doubt exists about right to access certain records, the doubt must be resolved in favor of the public’s right to see. A claim of annoyance, embarrassment, oppression, or undue burden or expense is not enough .to overcome the public’s right of access to public records. Copeland v. Copeland, 07-0177 (La.10/16/07), 966 So.2d 1040; In re Kemp, 45,028 (La.App.2d Cir.03/03/10), 32 So.3d 1050, writ denied, 10-0755 (La.06/25/10), 38 So.3d 338.
Although no statutory provision exempts certain court proceedings and documents from public view, the constitutional right of access is not unlimited. La. Const. Art. 1, § 5 provides, in pertinent part, that every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. This provision protects certain documents and information from disclosure. In re Kemp, supra.
In Copeland, supra, the supreme court recognized that a balancing test must be employed to analyze these competing constitutional rights. In particular, it must be shown that the parties’ privacy interests outweigh the public’s constitutional right of access to public records. Although there may be some justification for sealing certain sensitive evidence in a. proceeding, the trial court, should it grant such relief, must ensure that its order is narrowly tailored to cause the least interference possible with the right of public access. Id.
David contends that the trial court erred as a matter of law in its failure to seal all or the portions of the record pertaining to the custody of the children. David further asserts that the Louisiana Supreme Court in Copeland, supra, recognized the legitimacy of protecting the interest of children by sealing a record.
We find David’s interpretation of, and reliance upon, Copeland to be flawed. In Copeland, the supreme court determined that the parties had a constitutionally protected privacy interest relating to the safety and protection of their children. That privacy interest, the court found, was both subjective and objective, in that the expectation in the protection and safety of children is one which society at large recognizes as being reasonable. Id.; see also Capital City Press v. East Baton Rouge Parish Metro. Council, 96-1979 (La.07/01/97), 696 So.2d 562. Thus, the supreme court held that if disclosure of certain information would imperil the safety of the parties’ children, then their interest in keeping that information private would outweigh the public’s right of access to that information.
*920 The trial court in this case sealed certain evidence, e.g., nude pictures that Samantha sent via text message of herself to David, but found no good cause shown to seal the record in its entirety. Based upon our review of the record, we find that the trial court’s ruling was not clearly wrong. David failed to show that the privacy interests of the parties or their children outweighed the public’s right of access. Moreover, David failed to offer sufficient evidence to show that the disclosure of certain information would imperil the safety of either SJS or SES.

Conclusion

For the foregoing reasons, the judgment of the trial court, as well as the JCIP accompanying said judgment, awarding joint custody of SES and SJS to David Anthony Szwak and Samantha Earnest Szwak, with Samantha being named the domiciliary parent, is affirmed. The trial court’s denial of David’s motions to seal the record in its entirety and to vacate the July 5, |1(¾2012, final protective order, is also affirmed. The trial court’s assessment of all costs against David, however, is reversed and judgment is hereby rendered assessing costs of the lower court proceedings against David and Samantha in equal amounts. Costs of this appeal are fully assessed against David Anthony Szwak. AFFIRMED IN PART; REVERSED IN PART; AND, RENDERED.

. Samantha was under the influence of Lor-tab at the time of the accident, and the police report listed her level of impairment as "extreme.” The minor children, however, were not in the car when the accident occurred.