997 So.2d 149 (2008)
Cathy DAVIS, Plaintiff-Appellee
v.
Randall DAVIS, Defendant-Appellant.
No. 43,490-CA.
Court of Appeal of Louisiana, Second Circuit.
October 22, 2008.
*152 Kammer & Huckabay, Ltd. (A.P.L.C.), by Charles H. Kammer, III, Shreveport, for Appellant.
Daye, Bowie & Beresko, APLC, by Alfred R. Beresko, Shreveport, for Appellee.
Before CARAWAY, DREW and MOORE, JJ.
DREW, J.
Both parties objected to portions of the trial court judgment in this child support *153 dispute. Contending the litigants had agreed to deviate from the child support judgment, Randall Davis appealed the judgment ordering him to pay child support arrearages, finding him to be in contempt of court, failing to give him credit for payments made directly to his children, and directing him (1) to bring mortgage payments current on the home occupied by his ex-wife and children, and (2) to take steps sufficient to terminate the foreclosure against that home.
Answering the appeal, Cathy Davis, his ex-wife, complained that the trial court erred in permitting Randall to pay off the arrearages in monthly payments, failing to make the increase in child support retroactive to the date of judicial demand, insufficiently increasing his child support obligation, deferring sentencing on the contempt ruling, and granting him credit for some payments made directly to the children. She also sought attorney's fees for the appeal plus damages for a frivolous appeal.
The judgment of the trial court is affirmed and the matter is remanded to the trial court for further proceedings on the contempt of court sentence previously imposed upon Randall Davis.

FACTUAL AND PROCEDURAL BACKGROUND
Cathy Davis and Randall Davis married on August 6, 1983. On February 21, 1986, Brooks Davis was born. The Davises divorced and later remarried on April 27, 1990. Tyler Davis was born June 26, 1990, and Brandon Davis was born October 19, 1993. The couple again obtained a divorce on April 27, 2000, but the judgment was not reduced to writing and signed until over six years later. The terms of the consent judgment agreed to in 2000, but unsigned until December 29, 2006, provided, inter alia:
 Randall would pay $1,720.00 per month in child support;
 Randall would pay no more than $4,400.00 in child and spousal support unless the child support alone exceeded that amount;
 Randall would pay $2,280.00 contractual spousal support for 12 months retroactive to February 1, 2000;
 Randall would pay $2,680 for contractual spousal support for 48 months beginning February 1, 2001;
 Randall would pay the mortgage on the former matrimonial home;
 Randall was to claim the tax exemption for the house mortgage;
 Cathy waived other claims for temporary or permanent spousal support; and
 Cathy waived claims for education and increased earning capacity of Randall.
Following the court proceedings in 2000, Cathy and the children continued to live in the former matrimonial home. Randall paid the mortgage until he filed for bankruptcy in December 2006. A medical doctor, Randall practiced in a number of locations and was employed by several hospitals.
In July 2004, Randall began sending each child two $50.00 checks per month, and he deducted this amount ($300.00 per month) from his support payment, reducing the payment from $1,720.00 to $1,420.00 per month.
In 2005, Brooks Davis was 19 years old and graduated from high school. Randall decreased his child support payments by 1/3, paying $946.46 per month to Cathy. Thereafter, Randall paid for Brooks Davis' college expenses and/or assisted Brooks in obtaining student loans.
On February 17, 2006, the former spouses signed a "partial property settlement." *154 Randall and his ex-wife agreed to refinance the marital home occupied by Cathy and their three sons. Randall took out $30,000.00 of the home's equity and agreed to pay $3,200.00 to Cathy for past due alimony and, upon the future sale of the home, to give $60,000.00 in equity to Cathy. Both agreed to waive any reimbursement claim for payment of the mortgage note. Cathy stated that she made that agreement in an effort to assist Randall.
Trial testimony showed three of the hospitals at which Randall worked as a physician claimed Randall left without fulfilling his contractual obligations and owed the hospitals amounts totaling approximately three quarters of a million dollars. Randall testified that (1) he surrendered his medical license "around" December 1, 2006, and (2) in November 2006, he moved to Texas where he got a job as a medical fraud investigator paying $140,000.00 per year, significantly less than he earned as a physician. According to Randall, stress and health issues contributed to his decision to retire his medical license.
In December 2006, Randall and his present wife/partner[1] filed bankruptcy. At that point, Randall stopped making mortgage payments on the home occupied by his ex-wife and sons. Cathy intervened in her ex-husband's bankruptcy proceeding seeking enforcement of the child support decree. The bankruptcy court's judgment referred resolution of Cathy's claims of child support, the house note, and life insurance to the state court judge and denied Randall discharge from the claims.
On June 12, 2007, Randall filed a Rule to Reduce Child Support, claiming that Brooks Davis was over 18 years old and a high school graduate, Cathy's income had increased, and his income had decreased.
On July 6, 2007, Cathy filed a Rule to Accrue Past Due Child Support, To Increase Child Support, For Contempt for Non-Payment of Mortgage Note and Other Relief. She sought the following:
 $24,886.72 for child support arrearages;
 An increase in child support based on Randall's income and voluntary underemployment;
 Enforcement of the judgment ordering Randall to pay the mortgage;
 A finding that Randall was in contempt for nonpayment of the mortgage and child support; and
 Attorney fees and costs.
On October 4, 2007, the trial court ruled that:
 Randall must pay to Cathy an increased award beginning October 1, 2007, of $2,000 per month as child support for the minors;
 Randall was voluntarily underemployed;
 Randall must pay $20,086.72 in child support arrearages to Cathy for past due child support ($24,886.72 minus $4,800.00 credit for money he paid the children directly);
 Randall must pay child support arrearages of $500 per month from October 1 to December 1, 2007, and $750 per month beginning January 1, 2008;
 Randall was in contempt for failure to pay child support and the mortgage and was ordered to serve 90 days in jail beginning December 31, 2007, unless *155 the court determined he brought the payments current;
 Randall must pay the mortgage and remove the house from foreclosure; and
 Randall must pay court costs.
The parties acknowledged that the house subsequently went into foreclosure and was sold at sheriff's sale. In a judgment on a rule signed February 22, 2008, the trial court stayed further action pending the outcome of this appeal.

DISCUSSION

CHILD SUPPORT INCREASE
The former couple's adjusted gross incomes on their joint tax returns for 1999 and 2000 were $88,905.00 and $73,735.00. Randall testified that during this time, he was completing his residency before beginning his medical practice. The $1,720.00 per month child support was established in April 2000.
Tax returns filed into the record show that Randall's adjusted gross income for 2004 was $309,740.00 and for 2005, $221,237.00. Randall had not filed his 2006 tax return as of the 2007 trial. Forms W-9 placed into the record showed Randall had gross income of $317,681.60 for 2006, including $31,496.60 from Southern National Risk Management (his work as medical fraud investigator), $99,135.00 and $118,750.00 from DeSoto Regional Health System, and $68,300.00 from Emergency Staffing Solutions, Inc.
The child support worksheet put into the record by Cathy reported (for purposes of this proceeding) her monthly income at $2,678.00 and Randall's at $17,322.00, although she maintained Randall's actually exceeded that. The combined income amount of $20,000.00 (the maximum in the child support guidelines) resulted in Randall's portion of the child support obligation being $2,292.57 per month for two minor children, according to Cathy's worksheet.
Noting that many of the problems were of Randall's own making, the trial court found Randall to be voluntarily underemployed. The trial court observed that Randall's testimony about giving up his medical license due to stress and health problems was self-serving and unsupported by any medical testimony. The trial court has wide discretion in determining the credibility of witnesses. A determination by the trial court of whether the spouse is in good faith in ending or reducing his or her income is a factual determination which will not be disturbed on appeal absent an abuse of the wide discretion of the trial court. Luplow v. Luplow, 41,021 (La.App. 2d Cir.2/28/06), 924 So.2d 1135.
In Pearce v. Pearce, 348 So.2d 75 (La. 1977), the supreme court observed that in domestic relations, the trial court is vested with great discretion particularly in evaluating the weight of evidence based primarily on witness credibility. Having observed the demeanor of the witnesses, the trial judge is in the better position to decide their credibility.
Denying Randall's request that the child support be decreased, the trial court granted Cathy's request for an increase in child support. After examining the parties' incomes, the trial court set an in globo monthly award of $2,000.00 for the two remaining minor sons beginning prospectively from October 1, 2007, instead of the $2,292.57 sought by Cathy. We cannot say that the trial court's setting the monthly award for the two remaining minor sons at $2,000.00 was an abuse of the trial court's discretion.

*156 AWARD RETROACTIVE TO DATE OF JUDICIAL DEMAND

La. R.S. 9:315.21(C) directs that absent good cause, a judgment modifying a final child support judgment shall be retroactive to the date of judicial demand. When the trial court finds good cause for not making the award retroactive to the date of judicial demand, the court may fix the date on which the award shall commence. La. R.S. 9:315.21(E).
The burden is on the obligor parent to show good cause for not making the award retroactive to the date of judicial demand. The trial court is vested with much discretion in fixing awards of child support. The court's reasonable determinations shall not be disturbed unless there is a clear abuse of discretion. Harrington v. Harrington, 43,373 (La.App. 2d Cir.8/13/08), 989 So.2d 838; Rutledge v. Rutledge, 41,792 (La.App. 2d Cir.12/13/06), 945 So.2d 307. A trial judge is not required to assign reasons justifying a finding of good cause to make an award not retroactive to filing. Curtis v. Curtis, 34,317 (La.App. 2d Cir. 11/1/00), 773 So.2d 185.
Even though the burden is on Randall to establish the increased child support award should not be retroactive to the date of judicial demand, the decision to start the increase as of October 2007 instead of July 2007, when Cathy sought the increase, is within the trial court's great discretion. The trial court did not articulate the reason for commencing the increase in October instead of July.
The relationship between Randall and his ex-wife was complex and unusual. At times to her detriment, Cathy cooperated with Randall and his new partner in some respects. Notwithstanding Randall's improper deductions from his child support payments, the record reflects that, in his own unorthodox fashion, Randall consistently provided some level of support for his children. We cannot say that the record shows an abuse of the trial court's discretion in making the increase in child support commence in October instead of July 2007.

CREDIT FOR PAYMENTS MADE DIRECTLY TO THE CHILDREN
As to the initial reduction in his child support payments of $300.00, Randall paid each of his sons $100.00 a month in two $50.00 checks payable to each boy and sent to Cathy with her support check. Randall maintained that he and his ex-wife had agreed to his withholding the $300.00 paid directly to the children from the child support he sent to her. When he informed her about the direct payments, Randall testified his ex-wife did not like the idea of direct payments but said "fine." The record showed that Cathy received and cashed the children's checks. She testified she objected but gave the funds to the boys.
The trial court determined that Randall was entitled to a credit of $200 per month of the $300 per month direct payments to his sons. The trial court explained that Randall was not entitled to credit for the entire $300 paid directly to the children, because he had improperly deducted any funds he spent directly on the children for shoes, pocket money, cell phones, etc.
In essence, the trial court found that Cathy tacitly agreed in the direct payments to the children. The record shows that she, in fact, facilitated those direct payments. The trial court's great discretion will not be disturbed unless the appellate court discerns an abuse of that discretion. The record does not reveal an abuse of the trial court's great discretion in these matters. See discussion, Scott v. Scott, 43,455 (La.App. 2d Cir.8/13/08), 989 So.2d 290. The parties calculated and incorporated *157 into the judgment that Randall was entitled to a credit of $4,800.00[2] against the total arrearage of $24,886.72.

REDUCTION BY 1/3 WHEN BROOKS WAS 19
La. R.S. 9:315.22(B) governs termination of child support when a child reaches the age of majority.
B. When there is a child support award in globo for two or more children, the award shall terminate automatically and without any action by the obligor when the youngest child for whose benefit the award was made attains the age of majority or is emancipated relieving the child of the disabilities attached to minority.
An in globo child support award is not automatically reduced each time one of several children reaches the age of majority. The child support award remains the same until the obligor obtains a judgment reducing the in globo amount. Chambers v. Saucier, XXXX-XXXX (La.App. 3d Cir.2/7/07), 949 So.2d 662. Randall's reduction of the child support payment by 1/3 when Brooks was 19 and graduated from high school was improper and contrary to law.

CHILD SUPPORT ARREARAGES
Randall maintained that his unilateral reductions in his child support payments were the result of agreements reached between him and Cathy, who complained that Randall should not have been credited for $4,800.00 paid directly to the children. The trial court heard the testimony and, for the most part, rejected Randall's assertions of extrajudicial agreements.
Cathy placed into the record a meticulous month-by-month breakdown of support payments she received and what amounts Randall did not pay each month. Randall asserted he owed no back child support but he did not attack the amount of the arrearage.
The trial court accepted Cathy's calculation that Randall owed $24,886.72 in back child support. After applying the $4,800.00 credit due Randall from the direct payments to the children, the trial court set the arrearage at $20,086.72. On this record, we find no abuse of the trial court's discretion is setting the arrearages subject to the credit. Therefore, the complaints of both parties are rejected.
Likewise, we decline to tamper with the trial court's ordering the arrearages to be paid off in monthly installments. In her answer to this appeal, Cathy requested that the entire amount be made immediately payable. The trial court carefully considered Randall's situation and the needs of the children. The judgment was fashioned to give Randall an opportunity bring the mortgage current by selling some assets (e.g., the boat) and making monthly payments on the arrearages. This was no abuse of discretion. See discussion, Butcher v. Butcher, 93-407 (La. App. 5th Cir.11/23/93), 628 So.2d 101.

CONTEMPT
La. C.C.P. art. 221 provides that "contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." The decision to hold a party in contempt of court for disobeying the court's orders is within the trial court's great discretion. Only if the appellate *158 court finds an abuse of that discretion will a trial court's contempt ruling be reversed. A contempt proceeding for refusing to obey a trial court's order is not for the benefit of the litigant, although the contempt punishment may benefit the party seeking the contempt finding. The goal of a contempt proceeding is to vindicate the dignity of the court. In contempt, the sentence dictates whether the matter is criminal or civil in nature. Nesbitt v. Nesbitt, 40,442 (La.App. 2d Cir.1/13/06), 920 So.2d 326, writ denied, XXXX-XXXX (La.6/2/06), 929 So.2d 1255.
In a civil action to enforce a child support order, the trial court has power, among others, to fine or imprison the willful offender for up to three months and to fashion a coercive civil remedy with the threat of jail time, whether the offender's conduct is clearly shown to be willful or not. La. R.S. 13:4611(1)(d) and La. C.C.P. art. 224(2); Scott v. Scott, 43,455 (La.App. 2d Cir.8/13/08), 989 So.2d 290.
In Lutke v. Lutke, 33,001 (La.App. 2d Cir.2/1/00), 750 So.2d 512, 517, this court discussed the complexities of contempt findings in child support disputes.
The support obligation imposed on a mother and a father of minor children by Art. 227 is firmly entrenched in our law and is a matter of public policy. Neither equity nor practical inability to pay overrides this policy or allows a parent to avoid paying his or her share of the obligation where the inability arises solely from that parent's own neglect and failure.
While the enforcement of the personal obligation to pay child support can be pursued through ordinary civil remedies by the parent to whom the obligation is owed, the law also expressly provides that disobeying an order for the payment of child support is a specific ground for which a court may hold a delinquent party in contempt of court. La. R.S. 13:4611(1)(d). In such delinquent child support settings, the court must determine that disobedience to the court's order for support is willful or a deliberate refusal by the parent to perform an act which was within the power of the parent to perform. See, La. C.C.P. art. 224(2) and La. R.S. 13:4611(1)(c).
(Citations omitted.)
Generally, the failure to pay alimony and child support resulting from the obligor's financial inability to pay does not support a contempt charge. However, a trial court may find such a parent in contempt after an examination of certain financial and other factors, such as (1) the capacity of the parent for gainful employment immediately prior to the start of the contempt proceedings, (2) the living conditions and financial circumstances of the parent despite his unemployment (or underemployment), (3) the party's efforts to make the delinquent payments, and (4) proceedings to reduce or terminate the award based upon a change in the circumstances. Lutke v. Lutke, supra.
An unconditional punishment for contempt occurs if the sentence does not provide a stipulation for the delinquent party to purge himself or herself of contempt by paying the past due support or otherwise complying with the court's orders. Such a contempt sentence is criminal rather than civil in nature and must be proven beyond a reasonable doubt. Lutke v. Lutke, supra.
In the trial court judgment rendered October 7, 2007, and signed November 30, 2007, Randall was found in contempt of court for his failure to pay child support as ordered and his failure to pay the house note on the former matrimonial domicile as ordered. In addition, the judgment directed *159 that he bring the house payments current and "do whatever he has to do" to remove the house from foreclosure. The trial court sentenced Randall to 90 days in the parish jail on the contempt findings and suspended the execution of sentence until December 31, 2007, for a determination by the trial court of whether Randall had brought the house payments current and complied with other orders of the court.
Randall argued that because he made payments pursuant to extrajudicial agreements with his ex-spouse, he was not in arrears or, alternatively, should not have been held in contempt because he was not in willful disobedience of the judgment. Additionally, Randall urged that his financial situation made it impossible for him to comply with the trial court's order to bring house payments current and remove the home from foreclosure.
The finding that Randall was in contempt of court for his failure to make the child support and mortgage payments as ordered by the judgment is supported by the record. Frequently claiming lack of knowledge, Randall was unhelpful and cavalier in responding to questions about his finances. His assertion that he could not afford to pay the mortgage is belied by the record. Randall acknowledged that before he filed bankruptcy, he paid his mother some $19,000.00 which he described as repayment on a loan. The testimony indicated he chose to keep and make payments on a 25-foot boat and purchase a 2004 BMW rather than pay the house note. In addition, he testified he was vacationing in Mexico on money saved by his "non-wife" beginning the weekend after the trial court hearing.
Both parties acknowledge that the house was sold in the foreclosure proceeding. However, on this record, we have no information about what, if any, actions Randall took to seek to comply with the trial court's order that he bring the mortgage payments current and remove the house from foreclosure. Therefore, we are unable to determine whether Randall could have purged himself of the contempt through sincere but unsuccessful efforts or whether he should be ordered to serve the contempt sentence previously imposed but stayed by the trial court pending this appeal. Therefore, we remand this matter to the trial court for consideration of Randall's sentence for contempt of court.

FRIVOLOUS APPEAL
The appellate court may award damages for a frivolous appeal. La. C.C.P. art. 2164. This provision is penal in nature and is to be strictly construed. An appeal will not be deemed frivolous unless it is taken solely for delay, fails to raise a serious legal question, or counsel does not seriously believe in the proposition of law he is advancing. Appeals are favored and appellate courts are reluctant to impose damages for frivolous appeals. Straughter v. Hodnett, 42,827 (La.App. 2d Cir.1/9/08), 975 So.2d 81, writ denied, XXXX-XXXX (La.5/2/08), 979 So.2d 1286.
Our review of this record does not show that this appeal was taken solely for delay or that Randall did not seriously believe he was entitled to relief. An award of damages to Cathy for frivolous appeal is not warranted.

COSTS AND ATTORNEY'S FEES
La. R.S. 9:375(A) states that when the court renders judgment making executory past-due child support payments, it shall, except for good cause shown, award attorney's fees and costs to the prevailing party. The trial court awarded Cathy $3,000.00 in attorney's fees for the litigation concerning the past due support and ordered Randall to pay costs. In her answer to the appeal, she sought additional *160 attorney's fees for this appeal. As prevailing party, Cathy is awarded $1,000.00 in attorney's fees for this appeal. Costs of the appeal are assessed against Randall.

SEALED RECORD
For reasons we are unable to discern, the trial court ordered this record sealed. This action resulted in the record being unavailable to members of the public. Moreover, access to a sealed record by the parties or their attorneys is extremely limited. Under the policy of this court, a sealed appellate record is available only to parties or their attorneys pursuant to an order of this court and may be reviewed only at this courthouse.
The Louisiana Constitution has an "open courts" provision which mandates that all courts shall be open. La. Const. Art. I, § 22. Additionally, La. Const. Art. 12, § 3 provides that no person shall be denied the right to observe the deliberations of public bodies and to examine public documents, except in cases established by law. The right of access to public records is to be liberally construed in favor of unrestricted access. When doubt exists about right to access certain records, the doubt must be resolved in favor of the public's right to see. A claim of annoyance, embarrassment, oppression, or undue burden or expense is not enough to overcome the public's right of access to public records. Copeland v. Copeland, 07-0177 (La.10/16/07), 966 So.2d 1040.
Generally, pleadings are public records and not subject to being sealed. Louisiana has no specific statute providing for sealing court records. Trial courts exercise this power under general provisions on courts' authority to govern proceedings. La. C.C.P. arts. 191 and La. C.C. art. 1621(A). Copeland v. Copeland, supra.
In Copeland, supra, at pp. 1046-1047, Justice Victory addressed the standard to be applied in sealing court records:
Because Louisiana law provides a constitutional right of access to public records and a constitutional open courts provision, and because there is no statutory law exempting divorce records and proceedings from this right of access, a balancing test must be employed. Thus, in this case, we framed the balancing test to be undertaken by the trial court in analyzing the competing constitutional rights as follows:
Considering the strong constitutional bias in favor of open access by the public to court proceedings, we find the trial court's blanket order sealing the entire record in this case to be overbroad. Although there may be some justification for sealing certain sensitive evidence in a proceeding, the parties have the burden of making a specific showing that their privacy interests outweigh the public's constitutional right of access to the record. The trial court, should it grant such relief, must ensure that its order is narrowly tailored to cause the least interference possible with the right of public access.
The Copelands jointly argued that sealing the divorce record was necessary for the safety and protection of their children. Finding that sealing the entire record was too broad, the court ordered the Copeland record unsealed. Applying the least restrictive method available to protect the children, the supreme court directed that only the name of the children's school and the location of the family home be redacted.
Our review of this entire record reveals examples of poor behavior and/or unfortunate choices by both parties. However, nothing required the sealing of this record. In addition to impinging on *161 the constitutionally protected right of public access to the courts, a sealed record is a burden on the courts and an extreme inconvenience to attorneys. A record should be sealed in its entirety only in extremely limited situations. If court records must be restricted, the court must always fashion the relief to cause the least interference with public access. Examples of less restrictive remedies are redaction and sealing limited portions of the public record.
The appellate court may render any judgment which is just, legal and proper on the record on appeal. La. C.C.P. art. 2164. Neither party, nor anyone else, has sought relief from the order sealing this record. On its own motion, this court orders and directs that this entire record be unsealed.

DECREE
Ex proprio motu, the record is ordered unsealed forthwith. Randall Davis is ordered to pay costs of the appeal.
Randall Davis is ordered to pay Cathy Davis' appellate attorney's fees in the amount of $1,000.00. Other relief sought by Cathy Davis is denied.
The matter is remanded to the trial court for further proceedings on the contempt of court sentence against Randall Davis. In all other respects, the judgment is affirmed.
RECORD UNSEALED; JUDGMENT AFFIRMED; AND REMANDED.
NOTES
[1] Randall testified that on August 24, 2004, he married Kathy Davis, mother of his stepdaughter, Dana Nadine Wooley. The couple later learned that Davis' April 2000 divorce from Cathy, plaintiff and mother of Randall's three sons, was unsigned, making Randall's marriage to Kathy invalid. Apparently, Randall had another marriage in between his unions with Cathy, which ended in 2000, and the 2004 attempt to marry Kathy Davis.
[2] After determining the amount of the monthly credit due to Randall, the trial court instructed the attorneys to "do the math."