CARAWAY, J.
 

 I,Following their divorce, the parties reached an agreement for child support which was specifically affirmed to continue as an
 
 in globo
 
 award until the youngest child reached the age of majority. A consent judgment was entered. Within a year of the parties’ agreement, the oldest child reached the age of majority and the father’s income was reduced, causing him to seek modification of his support obligation. While the trial court recognized the father’s lower level of income and reduced the support obligation, the court did not select the guidelines’ support payment for the one remaining child but continued the
 
 in globo
 
 award based upon the scheduled support obligation for two' children. The father appeals the ruling, and for the following reasons, we affirm.
 

 Facts
 

 A judgment of divorce terminated the marriage of Kristi and Timothy Jones on November 16, 2006. Of the marriage, two boys, Caleb and Cody, were born. The parties reached agreement for a stipulated judgment for custody, support and partition of the community property which was signed by the trial court on May 29, 2007. At the time of the judgment, Cody was 12 years old. Caleb was 17, but turned 18 only days after the judgment was signed. Relevant to child support, the consent judgment provided as follows:
 

 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that TIMOTHY CHRIS JONES is ordered to pay child support for the maintenance of the minor children in the amount of
 
 *1277
 
 $1500.00 per month beginning April 2007, with the child support to continue in the same amount after Caleb Jones has reached the age of 18 and until Cody Jones reaches the age of 18.
 

 |2On March 14, 2008, Timothy filed a Rule to Decrease Child Support alleging a material change in circumstances arising from Caleb’s reaching the age of majority and a 50% reduction in income due to the loss of employment at both his full-time and extra jobs. Timothy prayed for a termination of his child support obligation to Caleb and for a recalculation of his remaining child support obligation for Cody according to the child support guidelines for one child set forth in La. R.S. 9:315.19. Kristi argued that there had been no material change in circumstances because the prior award contemplated Caleb’s majority and Timothy was voluntarily unemployed due to his own actions. She also filed a rule for arrearages and contempt proceedings.
 

 On May 29, 2008, the trial court heard evidence on the rule to decrease child support. Both parties testified along with two of Timothy’s former employers.
 

 Edward Forrest, the administrator of the nursing home where Timothy was formerly employed, testified that Timothy worked as a contract laborer for his nursing home from April of 2004 through July of 2007. He worked as a wound care specialist, an occupational therapist specializing in wound treatment. Timothy’s contract was terminated in July of 2007 because the nursing home phased out the position of wound care specialist and replaced it with a lower-paid professional. Forrest testified that Timothy’s termination had nothing to do with his abilities. While employed with the nursing home, Timothy made $40.00/hour and worked approximately 40-45 | ¡¡hours per week. Without specialization, an occupational therapist earned $30.00-$35.00/hour. Forrest testified that if Timothy were re-employed by the nursing home, he would earn no more than $30.00-$35.00/hour.
 

 Debbie Holloway, Registered Nurse Director at Christus Schumpert Hospital (“Schumpert”), testified that she oversaw the wound center where Timothy worked, apparently on a part-time basis. When she began working with Timothy, the wound center was run by an occupational therapist, although at the time of trial it was run by a physician. Holloway testified that when Timothy’s contract employment with Schumpert ended he was earning $50.00/hour. Timothy was terminated when “concerns were brought forward” to Holloway. Holloway testified that for a period in 2006 and 2007, Timothy did not work at the hospital due to substance abuse treatment. The conditions of his return to work were set forth in a return to work agreement. Holloway testified that one of the conditions of his return to employment was Timothy’s agreement to follow a set schedule as assigned by the manager of his team which included meetings and counseling. Holloway testified that a component of Timothy’s termination was his failure to abide by the terms of the return to work contract. Holloway described Timothy’s work abilities as excellent. She also stated that although the hospital generally no longer hired contract labor, if it should, an individual with Timothy’s specialization and experience would earn $45.00-$50.00/hour. In Holloway’s opinion, if Timothy had abided by the terms of his return to work contract, he would have continued his employment with Schumpert with a salary of $50.00/hour.
 

 |4Kristi testified that she was an employed teacher and earned a monthly salary of $3,976.25. She had remarried. At the time of trial, Cody was 13 and Caleb was 18 years old; Caleb had completed his
 
 *1278
 
 first year of college. Kristi testified that it was her understanding of the child support agreement that Timothy was to pay $1,500/month until Cody reached the age of eighteen.
 

 Timothy testified that he was trained as an occupational therapist, specializing in wound care. At the time of trial, Timothy was employed by Willis-Knighton Medical Center as an occupational therapist at the hourly rate of $33.25 which generated an annual salary of $75,000. He worked approximately 45 hours per week and had been employed by Willis-Knighton since October of 2007. He also maintained one nursing home contract from which he averaged income of $650.00/month. That monthly income fluctuated with patient volume. Timothy acknowledged that at the time of trial, an occupational therapist generally earned $40.00-$45.00/hour.
 

 Timothy testified that he had recently been diagnosed with a degenerative disease in his spine which limited his ability to lift patients. At the time of trial, he lived with his parents and was unable to pay the $1,500 child support obligation. Timothy submitted an affidavit of income and expenses and a child support worksheet into evidence. Based upon his calculations, he requested a reduction in child support for his one minor child in the sum of $682.50. Timothy admitted that he had agreed to pay child support for two children until the youngest turned eighteen.
 

 | ¡¡Timothy testified that he earned approximately $86,000 in 2006, although he admitted that he missed one month of work due to surgery. He made approximately $150,000 in 2005 and $140,000 in 2003. In 2007, he earned only $30,000 because Schumpert let him go in that year. Timothy testified that he also had less patient volume during 2007 at the nursing homes he served. He explained that his change in income was due to patient volume reduction caused by the change in wound care models utilized by hospitals and nursing homes. Basically, Timothy explained that the change in models resulted in physicians and nurses performing his job. Timothy testified that such a model could be done at a lesser cost and higher reimbursement to the hospital or nursing home. He was released from his job at Schumpert in May of 2007 “based on a corporate decision to let me go.” Timothy admitted to undergoing rehabilitation counseling for substance abuse which he completed in 2006. At the time of his release from employment, Timothy testified that he complied with monthly drug screening.
 

 After considering this evidence and testimony, the trial court took the matter under advisement. In a written opinion, the trial court reduced the
 
 in globo
 
 child support award to $1,134.35/month. The court concluded that Timothy had experienced a loss of income which was both voluntary and involuntary. The court determined that Timothy had an earning ability of at least $40.00/hour and based the child support adjustment on that income | (¡potential. The court also concluded that the parties’ consideration of Caleb’s majority in the child support agreement “should be honored.”
 
 [1]
 

 Timothy appeals the judgment and argues that upon finding a material change in circumstances due to Timothy’s decrease in salary, the trial court erred in failing to set the child support obligation according to the child support guidelines
 
 *1279
 
 for one child set forth in La. R.S. 9:315,
 
 et seq.
 

 Discussion
 

 A consent judgment is a bilateral contract which is voluntarily signed by the parties and accepted by the court. It has binding force from the voluntary acquiescence of the parties, not from the court’s adjudication.
 
 Gray v. Gray,
 
 37,884 (La.App. 2d Cir.12/12/03), 862 So.2d 1097. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046;
 
 Gray v. Gray, supra.
 
 Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include. La. C.C. art. 2051. It is not within the purview of this court to relieve an able party of an obligation which he freely and voluntarily entered into absent evidence of a vice of consent.
 
 Gray v. Gray, supra.
 

 In Louisiana, as in a majority of other states, a parent generally has no legal duty to support his or her children beyond the age of 18. La. C.C. art. 227; La. C.C. art. 230. Nevertheless, La. R.S. 9:315.22(A) and (B) provide as follows:
 

 |7A. When there is a child support award in a specific amount per child, the award for each child shall terminate automatically without any action by the obligor upon each child’s attaining the age of majority, or upon emancipation relieving the child of the disabilities attached to minority.
 

 B. When there is a child support award in globo for two or more children, the award shall terminate automatically and without action by the obligor when the youngest child for whose benefit the award was made attains the age of majority or is emancipated relieving the child of the disabilities attached to minority.
 

 An
 
 in globo
 
 child support award is not automatically reduced each time one of several children reaches the age of majority.
 
 Davis v. Davis,
 
 43,490 (La.App. 2d Cir.10/22/08), 997 So.2d 149.
 

 The Louisiana Child Support Guidelines set forth the method for implementation of the parental obligation to pay child support. La. R.S. 9:315,
 
 et seq.; Strange v. Strange,
 
 42,318 (La.App. 2d Cir.6/20/07), 960 So.2d 1223. The guidelines are intended to fairly apportion between the parties the mutual financial obligation they owe their children in an efficient, consistent and adequate manner. Child support is to be granted in proportion to the needs of the children and the ability of the parents to provide support.
 
 Strange v. Strange, supra.
 

 The guidelines are to be used in any proceeding to establish or modify child support. La. R.S. 9:315.1(A);
 
 Strange v. Strange, supra.
 
 The guidelines are mandatory and provide limits and structure to the trial court’s discretion in setting the amount of support. The trial court’s child support judgment will not be disturbed absent a clear abuse of discretion.
 
 Strange v. Strange, supra.
 
 There is a rebuttable presumption that the amount of child |ssupport obtained by use of the guidelines is proper and in the child’s best interest. La. R.S. 9:315.1(A).
 

 A party seeking a reduction in child support must show a material change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award. La. C.C. art. 142; La. R.S. 9:311(A);
 
 Strange v. Strange, supra.
 
 Louisiana jurisprudence distinguishes between voluntary and involuntary changes in circumstances. An involuntary change in cir
 
 *1280
 
 cumstances results from fortuitous events or other circumstances beyond a person’s control, such as loss of one’s position or illness. A voluntary change in circumstances generally does not justify a reduction in the support obligation.
 
 Strange v. Strange, supra.
 
 Voluntary underemployment is a question of good faith of the obligor spouse. If a parent is voluntarily unemployed or underemployed, the child support obligation must be calculated on the basis of his or her income earning potential, unless the party is physically or mentally incapacitated or is caring for a child of the parties under the age of five. La. R.S. 9:315.11(A);
 
 Strange v. Strange, supra.
 
 A determination by the trial court of whether the spouse is in good faith in ending or reducing his or her income is a factual determination which will not be disturbed on appeal absent an abuse of the wide discretion of the trial court.
 
 Davis v. Davis, supra; Luplow v. Luplow,
 
 41,021 (La.App. 2d Cir.2/28/06), 924 So.2d 1135.
 

 Initially, we note that even in the absence of the parties’ contract embodied in the 2007 consent judgment, La. R.S. 9:315.22 A and B can be |9construed together as requiring a specific automatic reduction provision in the existing child support judgment (Subpart A) in order to avoid the
 
 in globo
 
 consequences mandated by Subpart B. If Subparts A and B are firm rules allowing no challenge upon the event of one child reaching majority, such rules would promote a policy preventing further controversy to change the child support obligation since the conclusions reached in the prior judgment addressed in advance such event.
 

 Nevertheless, we need not place a construction on La. R.S. 9:315.22 for application to this case since in our opinion the parties’ contract and prior consent judgment answer all questions concerning the matter. We do not lose sight of the important context in which this
 
 in globo
 
 child support award was agreed to by the parties. The agreement was reached virtually on the eve of the child’s eighteenth birthday and, significantly, concerned a partition of the community which also has presumptive economic trade-offs. Children upon reaching the age of 18 still may have economic needs over which the parents can reach an agreement for the child’s future benefit as a major. While the ongoing child support obligation was always subject to re-evaluation in the event of a material change in the parents’ income before the youngest child attains majority, the parties’ contractual understanding to continue an
 
 in globo
 
 determination for any such modification is clearly reflected as their agreement in this case. The trial court’s determination for modified child support therefore properly continued the parties’ agreement for an
 
 in globo
 
 award.
 

 | mlt is also apparent that the trial court found that Timothy had proven a material change in circumstances through his loss of income that was both involuntary and voluntary. Holloway testified that a component of Timothy’s loss of his job with Schumpert was his noncompliance with the conditions of his return to work contract. Despite Timothy’s disagreement with this fact, the trial court obviously accepted Holloway’s testimony. If believed, Holloway’s testimony establishes that Timothy lost a large portion of his income by his own neglect. Forrest, however, testified that Timothy’s loss of nursing home income resulted through no fault of Timothy, but rather a change in the wound care model.
 

 For the involuntary underemployment portion of Timothy’s loss of income, the trial court utilized his earning potential to establish Timothy’s income over his current wage of $33.00/hour. The trial court obviously accepted Timothy’s testimony that in his occupation, he could potentially
 
 *1281
 
 earn $40.00-$50.00/hour at the time of trial. Thus, the trial court’s finding of earning potential is supported by Timothy’s own admission. When this earning potential is united with Kristi’s uncontested income, the parties’ combined monthly adjusted gross income totaled $10,909.25. At this income range, the child support guidelines establish the parties’ child support obligation for both children at $1,693.00. Timothy’s percentage of the total support amount for two children given his $40.00/ hour earning potential ($6,933.00 monthly) is $1,134.35, the adjustment made by the trial court. Given the broad discretion allowed the trial court in these matters, Inwe find no manifest error in the determination of Timothy’s level of income and the award of child support.
 

 Conclusion
 

 The judgment of the trial court fixing the child support obligation is affirmed. Costs of this appeal are assessed to appellant.
 

 AFFIRMED.
 

 [1]
 

 . The court also ordered Timothy to pay ar-rearages by income assignment order and denied the contempt claim.