WILLIAMS, J.
 

 | , Appellant, Alphonso B. Williams, appeals a trial court judgment denying his motion to reduce child support and ordering him to pay child support in the amount of $1,000 per month, retroactive to May 13, 2008. For the following reasons, we affirm.
 

 FACTS
 

 Alphonso B. Williams and Tracy Douglas are the biological parents of Demarcus D. Douglas, who was born February 15, 1993. Williams and Douglas have never been married to each other. Williams testified that he did not learn that he was
 
 *105
 
 Demarcus’ father until the child was eight years old. Williams stated that he became active in the child’s life: he attended his school events, purchased his clothing and school supplies, and offered to pay for his private school tuition. However, Williams did not pay child support to Douglas.
 

 On May 21, 2007, the State of Louisiana, Department of Social Services, Office of Family Support (“the state”) filed a petition to establish paternity and fix child support on behalf of Demarcus. The hearing officer ordered the parties to submit to paternity testing, which subsequently proved that Williams was the child’s biological father.
 

 On April 22, 2008, Williams filed an
 
 ex parte
 
 petition for shared custody,
 
 [1]
 
 alleging that Douglas had “severely restricted” his visitation with Demarcus. Williams also alleged that Douglas’ act of living with her boyfriend out of wedlock was “causing emotional confusion and harm to the child[,]” and that her live-in boyfriend was “interfering [with] and hindering 12[Williams’] relationship with his son[.]” Williams requested: (1) shared custody of the child and reasonable visitation; (2) a mental health evaluation “of all parties;” (8) child support to be calculated “in accordance with the guidelines;” and (4) an order for Douglas to have “no overnight visitation [with] the opposite sex while the minor child is in the home[.]”
 

 On June 24, 2008, the trial court entered a judgment in which: (1) Williams was declared to be the biological and legal father of Demarcus; (2) a mental health evaluator was ordered to be appointed to examine Demarcus “and other parties deemed necessary;” (3) the parties were ordered to “immediately schedule and attend” mediation; (4) Douglas’ live-in boyfriend was ordered to “refrain from harassing and confronting” Williams; and (5) visitation with Williams and Demarcus was ordered for every other weekend. The court did not rule on the issue of child support at that time, but decided to give the parties an opportunity to reach an agreement through mediation.
 

 Mediation was unsuccessful. Thereafter, multiple hearings were held on the issue of child support, during which the court repeatedly ordered Williams to produce information regarding his personal income for the purpose of calculating the child support due. At a hearing held on August 25, 2008, Williams also was ordered to produce financial documents of his company, Williams Enterprises, LLC. After repeated requests from the state, counsel for Douglas, and finally, the trial court, Williams sporadically produced, over a six-month period, some of the requested financial documents.
 

 |sOn June 30, 2009, Williams and Douglas entered into an agreement, whereby Williams would pay child support in the amount of $1,000 per month. The trial court entered an interim judgment which reflected the parties’ agreement. The court noted that Williams had not produced many of the financial documents which were necessary to calculate his true income; therefore, the court ordered him to produce “his 2008 tax return and year-to-date information on individual accounts and all LLC’s [of which] he is a member by July 31, 2009[.]”
 

 Three months later, on September 30, 2009, Williams filed a “Motion to Decrease Interim Child Support,” alleging that he had experienced a significant loss of income and change in circumstances; there
 
 *106
 
 fore, he could no longer pay the amount of child support ordered. At the time of his filing, Williams had not made any of the child support payments that had been ordered by the court.
 

 On December 30, 2009, Douglas filed a “Rule to Accrue Past Due Child Support, For Contempt of Court and For Order of Wage Assignment,” alleging that Williams had failed to pay child support as ordered and that he was in arrears in the amount of $6,000. At a hearing held on January 12, 2010, the parties agreed on the record “to accrue the support of [$1,000] per month for the months of July, August, and September [2009]; which is $3,000.” Prior to entering the judgment, the trial court stated:
 

 Mr. Williams, you still owe support for October, November, December, and January. Just because there is a Judgment accruing ‘X’ number of monthsf,] that does not mean that you do not owe for these other months.
 

 [H]owever, your Lawyer filed a Motion to reduce, and it |4may be that the support amount would be reduced. We do not know yet. So that is the reason why we are only having the Judgment accruing July, August, and September. [H]owever, you understand you still owe child support.
 

 Based on what is before the Court, it does not appear that anything has been paid to Ms. Douglas, and that is outrageous.
 

 So there is going to be a Judgment ■ rendered today that you are in arrears $3,000.00 for July, August, and September; and we are allowing you 60 days to get that arrearage paid off in full.
 

 If it is not, then I have contempt of court Statutes available to me; which include fining, incarcerating, and other forms of relief. So it is in your best interest to get the $3,000 paid off.
 

 Nevertheless, Williams did not pay the $3,000 (or any other amount) within the time period ordered by the court. On April 16, 2010, mere days prior to the hearing on his motion to reduce child support, Williams paid the $3,000. No other payments were made to Douglas, despite the court’s remarks.
 

 The hearing on the motion to reduce child support was held on April 22, 2010. At the conclusion of the hearing, the trial court denied Williams’ motion to reduce child support. After reviewing his financial documents, the trial judge stated that she was unable to determine Williams’ actual income. The court disregarded the tax returns submitted by Williams, finding that the returns were “fraudulent.”
 
 [2]
 
 The court entered a final award, ordering Williams to pay child support in the amount of $1,000 per month, | ¡¡retroactive to May 13, 2008.
 
 [3]
 

 Williams filed a
 
 pro se
 
 appeal. Neither the state nor Douglas filed briefs in this Court.
 

 DISCUSSION
 

 Williams contends the trial court abused its discretion in entering a judgment with
 
 *107
 
 a final child support award of $1,000 per month. He argues that the court failed to calculate the child support payments in accordance with the statutory guidelines, failed to consider Douglas’ income when making the child support award, failed to utilize “a worksheet” to determine the amount of child support owed, and failed to provide specific reasons for deviating from the child support guidelines.
 

 The law regarding the payment of child support is well established: the obligation to support their children is a conjoint obligation upon the parents, and each must contribute in proportion to his or her resources.
 
 Durfee v. Durfee,
 
 45,752 (La.App.2d Cir.12/15/10), 56 So.3d 294;
 
 Cory v. Cory,
 
 43,447 (La.App.2d Cir.8/13/08), 989 So.2d 855;
 
 Kirkpatrick v. Kirkpatrick,
 
 41,851 (La.App.2d Cir.1/24/07), 948 So.2d 390. The overriding factor in determining the amount of support is the best interest of the child.
 
 Id.
 
 The party without legal custody, or nondomiciliary party, shall owe his or her total child support obligation as a money judgment of child support to the custodial or domiciliary party. LSA-R.S. 9:315.8(D);
 
 6Earle v. Earle,
 
 43,925 (La.App.2d Cir.12/3/08), 998 So.2d 828,
 
 writ denied,
 
 2009-0117 (La.2/13/09), 999 So.2d 1151.
 

 The Louisiana Child Support Guidelines set forth the method for implementation of the parental obligation to pay child support. LSA-R.S. 9:315,
 
 et seq.; Jones v. Jones,
 
 44,201 (La.App.2d Cir.4/8/09), 6 So.3d 1275;
 
 Strange v. Strange,
 
 42,318 (La.App.2d Cir.6/20/07), 960 So.2d 1223. The child support guidelines are intended to fairly apportion between the parties the mutual financial obligation they owe to their children in an efficient, consistent and adequate manner. Child support is to be granted in proportion to the needs of the children and the ability of the parents to provide support.
 
 Jones, supra; Strange, supra.
 
 The guidelines are mandatory and provide limits and structure to the trial court’s discretion in setting the amount of support. The trial court’s child support judgment will not be disturbed absent a clear abuse of discretion.
 
 Id.
 
 There is a rebuttable presumption that the percentage of child support obtained by the use of the guidelines is proper and in the child’s best interest. See, LSA-R.S. 9:315.1(A);
 
 Jones, supra; Strange, supra.
 

 In the instant case, Douglas testified that she was employed as a casino “slot floor person” and earned a salary of $10.80 per hour, plus tips. Douglas’ tax returns and W-2 forms were introduced into evidence, and she was questioned and cross-examined with regard to her income and household expenses.
 

 Williams testified that he was the CEO of Williams Enterprises and that he “paid himself’ a salary of $582.50 per week. Personal income tax |7returns introduced into evidence reflect that Williams reported an income of $34,250 in 2008 and $25,500 in 2009. However, when questioned about his current income, Williams responded, “I don’t know.” Williams testified that he could not recall whether he paid any of his personal expenses from his Williams Enterprises, LLC account. However, Williams’ financial documents revealed that he had written checks for his mortgage payment, as well as the payments on his Jaguar and Cadillac vehicles. The records also revealed that Williams had used the business accounts to pay for his haircuts, gym-membership fees and a male enhancement product. Williams admitted that he owned a home valued at “approximately $200,000-230,000” and that the mortgage payment was “about $1,800” per month. Williams also admitted that he drove a convertible Jaguar vehicle, for
 
 *108
 
 which he was paying “about $800” per month, and a Cadillac Escalade Sports Utility Vehicle, with a monthly payment of more than $900.
 

 After reviewing the entire record, including the transcript of Williams’ testimony, and all of the financial documents he has submitted, we agree with the trial court that Williams’ personal expenses belie his stated salary of $582.50 per week. When questioned about the amount of his current income at the time of the trial, Williams responded, “I don’t know.” Despite his lavish lifestyle and extraordinary personal expenditures, Williams has not made any attempt to financially support his son, even after entering into a legal agreement with Douglas to do so. Williams was uncooperative with all attempts to obtain a true picture of his actual personal income, and he misrepresented his income to the court. ^Consequently, the trial court based the award of child support on a salary of $55,000 per year,
 
 i.e.,
 
 the amount Williams earned before he was awarded lucrative contracts with the city of Shreveport.
 

 Williams has expended considerable time and money in his attempt to use the court as a vehicle to circumvent his legal obligation to pay child support in proportion to his resources. Even before the decline in his business, Williams did not pay the court-ordered monthly child support payments and, in fact, he used every avenue available to avoid financially supporting his child, including petitioning the court for shared custody. After the DNA testing proved that Williams was the child’s biological father and he was ordered by the court to pay child support, Williams refused to make any payments until he was faced with threats by the judge of being held in contempt of court. Based on this record, we find that the trial court did not abuse its discretion in ordering Williams to pay child support in the amount $1,000 per month. This assignment lacks merit.
 

 Williams also contends the trial court erred in denying his motion to reduce child support. He argues that he met his burden of proving that he had incurred a material, involuntary change in circumstances which warranted a reduction in the amount of child support payments that he owed.
 

 An award of child support may be modified if the circumstances of the child or of either parent materially change and shall be terminated upon proof that it has become unnecessary. LSA-C.C. art. 142. A party seeking a reduction in child support must show a material change in circumstances of 19one of the parties between the time of the previous award and the time of the motion for modification of the award. See LSA-R.S. 9:311(A);
 
 Jones, supra; Strange, supra.
 

 Louisiana jurisprudence distinguishes between voluntary and involuntary changes in circumstances. An involuntary change in circumstance results from fortuitous events or other circumstances beyond a person’s control, such as the loss of one’s employment position or illness. A voluntary change in circumstance generally does not justify a reduction in the support obligation.
 
 Jones, supra; Strange, supra.
 

 If a parent is voluntarily unemployed or underemployed, the child support obligation must be calculated on the basis of his or her income earning potential, unless the party is physically or mentally incapacitated or is caring for a child of the parties under the age of five years old. LSA-R.S. 9:315.11(A). Voluntary underemployment is a question of good faith of the obligor parent.
 
 James v. Davis,
 
 45,955 (La.App.2d Cir.1/26/11), 57 So.3d 447,
 
 unit not considered,
 
 2011-0425
 
 *109
 
 (La.4/8/11), 61 So.3d 674;
 
 Jones, supra.
 
 Whether the obligor is in good faith in reducing his or her income is a factual determination which will not be disturbed on appeal absent an abuse of the trial court’s wide discretion.
 
 James, supra; Fuqua v. Fuqua,
 
 45,555 (La.App.2d Cir.9/22/10), 47 So.3d 1121.
 

 In the instant case, Williams testified that his income declined “dramatically” in 2009, when he began to experience negative media attention after he was arrested.
 
 [4]
 
 He stated that prior to his arrest, he had |inseveral lucrative business contracts, including one with the city of Shreveport. However, according to Williams, after his arrest, “no one” would do business with him because “of all the media attention that I’ve attracted.” On cross-examination, Williams indicated that “little” about his personal lifestyle had changed since his business declined. He admitted that he continued to live in his home and he still drove both the Jaguar and Cadillac vehicles. However, he stated that he was in arrears on his mortgage payments and the monthly payments on both of the vehicles. When asked how he was able to maintain his lifestyle, Williams testified that some friends helped him by giving or loaning him money.
 

 Prior to making its ruling on the motion to reduce child support, the trial court stated the following:
 

 [Y]our personal income tax returns I give no credence to them whatsoever. These are not[,] by any stretch of the imagination, an accurate depiction of what your income is.
 

 I have no idea what your income is. I do not think anybody in this room knows what your income is. However, when I ran some numbers earlier to get to the [$1,000] that we did as an interim Order ... that would have had you making around $55,000 a year.
 

 [[Image here]]
 

 [I] do not have any idea what your income is; but you are clearly able to afford the [$1,000] a month.
 

 That is borne out by the fact that, before you got all this City business, you were making at least that, if not more. So you ought to be able to do that with trucking. You are able-bodied. You could get other jobs.
 

 We agree. Williams testified that he did not know his income at the Intime of the trial. As stated above, Williams testified that his income was only $582.50 per week, even before the decline in his business. However, he did not include the additional “income” he derived from paying his personal expenses from his business account.
 

 The record reveals that, notwithstanding his more recent misfortunes, Williams has owned a lucrative trucking business for several years. He also has vast experience as a dump truck operator and can continue to maintain his commercial driver’s license; thus his earning potential is sufficient to support his child. Even if Williams is currently unable to derive sufficient income to support his minor child by working solely as CEO of his business enterprises, he can supplement his income by working as a driver. Accordingly, we find that the trial court was not manifestly erroneous, or clearly wrong, in denying Williams’ motion to reduce the child support payments. This assignment lacks merit.
 

 
 *110
 
 Finally, Williams contends the trial court erred in making the child support award retroactive to May 13, 2008. Williams concedes that he included a demand to establish child support in his petition for shared custody filed in April 2008. However, he argues that the judgment should not have been made retroactive to the date Douglas filed her answer to his petition because the answer did not include a judicial demand for a final award of child support. He asserts that Douglas did not make her judicial demand for final support until her attorney did so orally, in open court, on April 21, 2010; therefore, the judgment should have been made effective on that date.
 

 |l2An award of child support shall be retroactive to the date of judicial demand, except for good cause shown. LSA-R.S. 9:315.21. “[RJetroactivity is intrinsic to the concept of child support under Louisiana’s civilian tradition[.] Louisiana law ‘abhors a gap in the support of one in need.’ ”
 
 Fink v. Bryant,
 
 2001-0987 (La.11/28/01), 801 So.2d 346, 350, quoting
 
 Hogan v. Hogan,
 
 549 So.2d 267, 271 (La. 1989). Retroactivity in this context “is not in the nature of a penalty, but merely a judicial recognition of a pre-existing entitlement. Only practicality postpones the effective date of the obligation to pay child support to the date a court orders that payment.”
 
 Vaccari v. Vaccari,
 
 2010-2016 (La.12/10/10), 50 So.3d 139, 142, quoting
 
 Fink, supra,
 
 at 350.
 

 Upon a showing of good cause, a trial court may order a final child support award retroactive to the date of judicial demand, even though there has been an interim award in effect.
 
 Vaccari, supra.
 
 The burden is on the obligor parent to prove that good cause exists for not making the award retroactive to the date of judicial demand.
 
 Rutledge v. Rutledge,
 
 41,792 (La.App.2d Cir.12/13/06), 945 So.2d 307;
 
 Welborne v. Welborne,
 
 29,479 (La.App.2d Cir.5/7/97), 694 So.2d 578,
 
 writs denied,
 
 97-1800 (La.10/13/97), 703 So.2d 621
 
 and
 
 97-1850 (La.10/13/97), 703 So.2d 623.
 

 Here, the state filed a petition to establish paternity and child support on behalf of the minor child, Demarcus, in May, 2007; an interim award was entered on June 30, 2009. Meanwhile, on April 22, 2008, Williams filed a petition for shared custody, in which he requested that child support be calculated “in accordance with the guidelines[.]” In ordering the child 113 support award to be retroactive to May 13, 2008, the trial court stated:
 

 [Williams] put the child support at issue in April of 2008. I could make it effective that date; but, out of an abundance of caution, there is an answer filed on May 13, 2008.
 

 We find that Williams failed to carry his burden of proving that good cause exists for not making the award retroactive to May 13, 2008. As stated above, a judicial demand for final child support was made, albeit by Williams, on April 22, 2008. We find that the trial court did not err in making the award for child support retroactive to May 13, 2008, the date Douglas filed her answer to Williams’ judicial demand to establish child support. This argument lacks merit.
 

 CONCLUSION
 

 For the reasons set forth herein, the judgment of the trial court, ordering appellant, Alphonso B. Williams, to pay child support to Tracy Douglas in the amount of $1,000 per month, retroactive to May 13, 2008, is hereby affirmed. Costs of this appeal are assessed to appellant, Alphonso B. Williams.
 

 AFFIRMED.
 

 [1]
 

 . The shared custody matter was subsequently consolidated with the child support proceedings.
 

 [2]
 

 . The trial court noted that in 2008, Williams reported $34,250 in annual personal income. However, a credit application signed by Williams around that time indicated an income of $20,000 per month. The court also noted that assets owned by Williams belied an annual income of $34,250.
 

 [3]
 

 . The trial court also found that Williams was in arrears in the amount of $7,000 and ordered him to pay attorney’s fees in the amount of $1,000, plus court costs. Additionally, the court found that Williams had abandoned his claim for shared custody, and the court dismissed that claim. Williams did not appeal these portions of the judgment.
 

 [4]
 

 . At the time of the hearing, Williams testified that criminal charges were pending against him for "home improvement fraud, filing false public documents, illegal possession of stolen things [and] simple criminal damage to property.”